In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00138-CR


______________________________




JASON DEMARCUS FORT, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 115th Judicial District Court


 Upshur County, Texas


Trial Court No. 14,377




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 When Gilmer police executed a search warrant at 904 Warren Street, Jason Demarcus Fort
was there with various men, but had not been there as long as had many of the others. Fort was in
a back bedroom when police arrived and tried to break out a window to escape, cutting himself badly
in the process. When officers corralled him and were in the process of taking him to an emergency
medical vehicle for treatment, Fort made another effort to escape, running out the front door. This
time, Fort was tackled and taken to the hospital. Several batches of crack cocaine were later found
on the premises. Some of those present at the time protested that the cocaine did not belong to Fort. 
Fort appeals his resulting conviction for possession of a controlled substance with intent to deliver,
within 1,000 feet of a school zone. After reviewing the record and evaluating the arguments of
counsel, we hold that (1) the evidence is sufficient to support Fort's conviction, (2) allowing the
cross-examination of one of Fort's witnesses was not error, and (3) a hearing on Fort's motion for
new trial was not requested. We, therefore, affirm the trial court's judgment.

(1) The Evidence Is Sufficient to Support Fort's Conviction

 Fort first complains the evidence was insufficient. In his brief, he cites the standards of
review for legal and factual sufficiency, but his single point of error does not articulate which
standard he believes is not met or whether he is arguing that neither were met. His argument asserts
that, where there were trace amounts of cocaine found on the digital scales in his pocket, Fort could
at most be guilty of possession of less than one gram of controlled substance in a drug-free zone. 
The jury was instructed on this lesser offense, yet still convicted Fort of the charged offense. (1)

 In reviewing the legal sufficiency of the evidence, we view all the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000). In a factual sufficiency review, we review all the evidence, but do so in a neutral
light and determine whether the evidence supporting the verdict is so weak or is so outweighed by
the great weight and preponderance of the evidence that the jury's verdict is clearly wrong or
manifestly unjust. Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); Watson v. State,
204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); Clewis v. State, 922 S.W.2d 126, 135 (Tex. Crim.
App. 1996).

 Under either sufficiency standard, it is unnecessary for the State's evidence to exclude every
other possible hypothesis but that of the accused's guilt, as long as there are sufficient links to
connect the accused to the crime. Sonnier v. State, 913 S.W.2d 511, 516 (Tex. Crim. App. 1995);
Benson v. State, 240 S.W.3d 478, 482 (Tex. App.--Eastland 2007, pet. ref'd); Harris v. State, 133
S.W.3d 760, 764-65 (Tex. App.--Texarkana 2004, pet. ref'd). In the context of a charge of
possession of controlled substance, many links to consider have ben recognized:

 (1) the contraband was in plain view or recovered from an enclosed place; (2) the
accused was the owner of the premises or the place where the contraband was found;
(3) the accused was found with a large amount of cash; (4) the contraband was
conveniently accessible to the accused; (5) the contraband was found in close 
proximity to the accused; (6) a strong residual odor of the contraband was present;
(7) the accused possessed other contraband when arrested; (8) paraphernalia to use
the contraband was in view, or found on the accused; (9) the physical condition of
the accused indicated recent consumption of the contraband in question; (10) conduct
by the accused indicated a consciousness of guilt; (11) the accused attempted to flee;
(12) the accused made furtive gestures; (13) the accused had a special connection to
the contraband; (14) the occupants of the premises gave conflicting statements about
relevant matters; (15) the accused made incriminating statements connecting himself
or herself to the contraband; (16) the quantity of the contraband; and (17) the
accused was observed in a suspicious area under suspicious circumstances.


Muckleroy v. State, 206 S.W.3d 746, 748 n.4 (Tex. App.--Texarkana 2006, pet. ref'd) (citing
Lassaint v. State, 79 S.W.3d 736, 740-41 (Tex. App.--Corpus Christi 2002, no pet.) and Kyte v.
State, 944 S.W.2d 29, 31-32 (Tex. App.--Texarkana 1997, no pet.)). It is the logical force of such
links, rather than mere quantity, that is important in determining whether the evidence is sufficient
to connect the accused to the alleged contraband or crime. Evans v. State, 202 S.W.3d 158, 162
(Tex. Crim. App. 2006).

 Officer Mark Case testified that Ricky Moore, the owner of the house at 904 Warren, had
expressed concerns to Case about several young men who hung around Moore's house and dealt
crack cocaine. Moore denied alerting the police. Case and other law enforcement personnel placed
the house under surveillance and eventually secured a search warrant. Fort was seen at the house
during the surveillance period. On February 17, 2006, officers executed the search warrant, finding
two plates with crack cocaine, a razor blade, a loaded pistol, and a set of digital scales on the kitchen
table. In a back bedroom, Fort and Michael Brown broke out a window and tried to flee. Fort
suffered cuts to his arms from the escape attempt and was not handcuffed because of his wounds. 
As officers led Fort out of the house, Fort ran out the front door but was apprehended. Fort was
taken to a hospital and received stitches for the injuries to his arm. Randy Burris of the Gilmer
Police Department testified the house was 317 feet from a Head Start school. 

 On Fort's person was found a set of digital scales, which bore cocaine residue. In Fort's shoe
was $618.00 in currency. All the men at the scene were found to have currency hidden in their
shoes. More than fifty grams of crack cocaine was found in the house in various locations. Moore
denied that he had complained to police about the men hanging around his house or that he knew
police had the house under surveillance. Moore did, however, admit he was intimidated by the men,
calling them a "little gang" that would not leave when he asked them to do so. (2) He also did not deny
knowing that drugs were being sold from his house. Moore admitted he used crack cocaine himself
and had felony drug convictions which had sent him to prison "two or three times." He testified to
being sure that none of the drugs found in his house belonged to Fort. Fort had arrived about twenty
or thirty minutes before the police, and the other men, with the cocaine, had been present at least an
hour before the search. This was Moore's reason for feeling certain none of the cocaine could be
attributed to Fort. 

 Fort, in his defense, also read into the record part of the testimony of fellow defendant Joshua
Haynes. (3) In that excerpt, Haynes said that the cocaine belonged to him and the men present other
than Fort. Haynes said Fort was not present when the drugs were purchased. Haynes pled guilty to
a charge arising from this same search. After Fort's appellate counsel filed a brief in this appeal, Fort
filed a pro se brief, which consisted of a lengthy handwritten statement from Reginald Johnson. 
Johnson was one of the other men arrested at the house on this occasion. In his statement, Johnson
says the drugs at the house were not Fort's.

 Fort does not have the right to hybrid representation, and Johnson's notarized statement was
not presented to the jury. We are not permitted to consider evidence that was not part of the record
below--such supplementation is inappropriate under our appellate rules, and such proffers of proof
are generally acceptable only within the context of an application for writ of habeas corpus. See
Ramirez v. State, 104 S.W.3d 549, 551 n.9 (Tex. Crim. App. 2003) (citing Solomon v. State, 49
S.W.3d 356, 365 (Tex. Crim. App. 2001)). Accordingly, we cannot consider it in this matter.

 In Fort's case, a large amount of crack cocaine was found in plain view in the house, and
various other quantities of cocaine were found throughout the house. Fort was in possession of drug
paraphernalia--scales with trace amounts of cocaine--and a large amount of cash. Indeed, most of
the men at the scene had large amounts of currency hidden in their shoes. Fort made two attempts
to flee, which we can categorize as indicating consciousness of guilt. Evidence of attempting to flee
is admissible and may indicate consciousness of guilt. See Figueroa v. State, 250 S.W.3d 490, 503
(Tex. App.--Austin 2008, pet. ref'd); Smith v. State, 118 S.W.3d 838, 841, 843 (Tex.
App.--Texarkana 2003, no pet.). The large amount of cocaine at the house paired with Moore's
testimony that many of these same men were frequently at the house dealing drugs--when added to
Fort's possession of a large sum of cash and scales with cocaine residue and his two attempts to
flee--strongly suggests that Fort's presence on the premises was not innocent.

 The jury is free to believe or disbelieve the testimony of any witness, to reconcile conflicts
in the testimony, and to accept or reject any or all of the evidence of either side. Bottenfield v. State,
77 S.W.3d 349, 355 (Tex. App.--Fort Worth 2002, pet. ref'd). A jury confronted with conflicting
evidence may elect to believe one witness and disbelieve others and may resolve inconsistencies in
the testimony of any witness, even to the extent of accepting the testimony of laypersons which
disputes that of experts. Cain v. State, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997). We may
not substitute our own determination for that of the jury. See Ortiz v. State, 93 S.W.3d 79, 87-88
(Tex. Crim. App. 2002); Scott v. State, 934 S.W.2d 396, 399 (Tex. App.--Dallas 1996, no pet.).

 It was up to the jury to evaluate the witnesses' credibility and to weigh testimony on both
sides. The jury weighed the opposing evidence and found Fort guilty beyond a reasonable doubt. 
We find that the logical force of the above links all provide legally and factually sufficient evidence
to support Fort's conviction. We overrule this point of error.

(2) Allowing the Cross-Examination of One of Fort's Witnesses Was Not Error


 Fort also claims error related to the cross-examination of a defense witness with "have you
heard" questions concerning Fort's prior criminal record. Based on our conclusion that Fort's own
direct examination opened the door to this topic, we find no error in the trial court's ruling.

 In Fort's case-in-chief, he called Moore, at whose house the search was conducted. Moore
said he knew all the men at the scene, including Fort. He had known Fort about ten years. On the
day of the search and arrest, Moore said Fort had only recently arrived, about twenty to thirty minutes
before officers arrived and executed the warrant. Based on this arrival time, Moore was sure none
of the cocaine at the scene was Fort's, because the other men and the cocaine were already at the
house when Fort arrived. When asked about the scales found in Fort's pocket, Moore said he knew
nothing about that. Moore, who has diabetes and a prosthetic leg, said Fort frequently helped him
around the house and brought him groceries. Fort, said Moore, would help with the dishes, sweep
the floors, or leave money for Moore. All that led to Moore's testimonial that Fort was "a pretty
good guy." 

 In response to Moore's testimonial of Fort's good character, the State asked to be allowed to
cross-examine Moore using Fort's prior conviction for delivery of cocaine. The trial court allowed
it over Fort's objection.

 The State asked Moore if he was aware that Fort had been convicted in March 2002 for
delivery of cocaine. Moore said he knew of the conviction but thought it was for marihuana. 

 The Texas Court of Criminal Appeals has reviewed a similar situation. See Harrison v. State,
241 S.W.3d 23 (Tex. Crim. App. 2007). In Harrison, a defense witness said the defendant "was a
sweet person, he was a good person" and that he "watched my kids and I don't have a problem with
him." Id. at 25. Citing Rules 404 and 405 of the Texas Rules of Evidence, and stating that
"[a]lthough Appellant did not intentionally elicit [the witness'] character testimony, the non-responsiveness of [the witness'] statement does not change the fact that it was character evidence
offered by a defense witness." Id. at 27; see Tex. R. Evid. 404, 405. The cross examination was
allowed.

 In an earlier case the court explicitly held that a witness who testifies about a defendant's
good character may then be cross-examined to test the witness' awareness of relevant specific
instances of bad conduct. See Wilson v. State, 71 S.W.3d 346, 349-50 (Tex. Crim. App. 2002).
Wilson had called a cleric to testify about his involvement in Wilson's life and Wilson's character. 
The court held that, because a witness gave his good-character opinion of the defendant, the State
was then entitled to ask questions about prior criminal acts. Although Wilson involved testimony
at the punishment phase, the Texas Court of Criminal Appeals' reasoning in Wilson and Harrison
controls the instant situation.

 A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion
standard. See Green v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996). We will not reverse
a trial court whose ruling was within the "zone of reasonable disagreement." Id. at 102.

 We find the trial court did not abuse its discretion by allowing this line of cross-examination. 
We overrule this point of error.

(3) A Hearing on Fort's Motion for New Trial Was Not Requested

 Finally, Fort complains the trial court erred by not setting a hearing on Fort's motion for new
trial. Fort filed a motion for new trial alleging that, following trial, the district attorney and Fort's
trial counsel spoke to a jury member who stated that he had been reporting and complaining of drug
trafficking in the area for five years and that the jury member believed Fort had been trafficking in
the jury member's neighborhood. 

 Fort's trial counsel filed a motion requesting a new trial and attached an affidavit describing
the conversation with the jury member. Nowhere in the motion, though, did Fort request a hearing
on the matter; nor was a proposed order with a hearing date attached to the motion.

 This situation is controlled by Rozell v. State, 176 S.W.3d 228 (Tex. Crim. App. 2005). In
Rozell, the appellant filed a motion for new trial, but did not request a hearing on the motion. (4)
 
Rozell argued on appeal that the trial court erred in failing to hold a hearing after Rozell had
presented, or filed, his motion. But the Texas Court of Criminal Appeals pointed out that
"presentment" of a motion for new trial requires giving the trial court actual notice of the relief
sought. Id. at 230; Todd v. State, 242 S.W.3d 126, 133 (Tex. App.--Texarkana 2007, pet. ref'd). 
Analogizing to the principles behind the doctrine of preservation of error, the Texas Court of
Criminal Appeals ruled that a trial court's ruling should not be reversed where the defendant did not
timely make the trial court aware of the alleged error and give the trial court an opportunity to correct
it. Rozell, 176 S.W.3d at 230. "Presenting the motion, along with a request for a hearing, is required
to let the court know that the defendant wants the trial court to act on the motion and whether the
defendant would like a hearing on the motion." Id. Based on the record before us, we find that Fort
failed to "give the trial court actual notice that he timely filed a motion for new trial and request[ed]
a hearing on the motion for new trial." Id. We overrule this point of error. 






 We affirm the judgment.




 Josh R. Morriss, III

 Chief Justice


Date Submitted: June 17, 2008

Date Decided: October 9, 2008


Do Not Publish


1. If Fort is asserting claims of legally and factually insufficient evidence, he has presented a
multifarious point of error. We may overrule any multifarious or inadequately briefed point of error.
Martin v. State, 252 S.W.3d 809, 813 n.4 (Tex. App.--Texarkana 2008, no pet.); see also Tex. R.
App. P. 38.1. But see Chimney v. State, 6 S.W.3d 681, 688 (Tex. App.--Waco 1999, pet. ref'd).
Further, because it is unclear from his argument which claim he is presenting, his point is
inadequately briefed. Nonetheless, we address his arguments in the interest of justice.

2. Moore's sister had better luck; when they knew she was coming, the men would leave, only
to return. 
3. About three weeks before the instant trial, another trial was held on Fort's charge. After
testimony, but just before the jury was to deliberate, one of the jurors realized he worked with a
relative of Fort, and that co-worker had made several attempts to contact the juror. The juror was
uncomfortable with this situation and said it would affect his deliberations. The trial court declared
a mistrial. 
4. Rozell though, unlike Fort, did attach to his motion a proposed order form listing "options
[for the trial court] of having a hearing or ruling on the motion without a hearing, which, without a
more specific request, left to the trial court's discretion whether a hearing should be held." The
Texas Court of Criminal Appeals held that "appellant did not adequately advise the trial court of his
desire to have a hearing." Rozell, 176 S.W.3d at 231.



nt-family:"Times New Roman","serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("6-10-025-CV%20McCurley%20v.%20Capitol%20Indemnity%20FINAL%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("6-10-025-CV%20McCurley%20v.%20Capitol%20Indemnity%20FINAL%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("6-10-025-CV%20McCurley%20v.%20Capitol%20Indemnity%20FINAL%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-10-025-CV%20McCurley%20v.%20Capitol%20Indemnity%20FINAL%20mtd_files/header.htm") ecs;}
@page Section1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-025-CV%20McCurley%20v.%20Capitol%20Indemnity%20FINAL%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-025-CV%20McCurley%20v.%20Capitol%20Indemnity%20FINAL%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-025-CV%20McCurley%20v.%20Capitol%20Indemnity%20FINAL%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-025-CV%20McCurley%20v.%20Capitol%20Indemnity%20FINAL%20mtd_files/header.htm") f1;
 mso-first-header:url("6-10-025-CV%20McCurley%20v.%20Capitol%20Indemnity%20FINAL%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-025-CV%20McCurley%20v.%20Capitol%20Indemnity%20FINAL%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.Section1
 {page:Section1;}
@page Section2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-025-CV%20McCurley%20v.%20Capitol%20Indemnity%20FINAL%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-025-CV%20McCurley%20v.%20Capitol%20Indemnity%20FINAL%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-025-CV%20McCurley%20v.%20Capitol%20Indemnity%20FINAL%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-025-CV%20McCurley%20v.%20Capitol%20Indemnity%20FINAL%20mtd_files/header.htm") f2;
 mso-first-header:url("6-10-025-CV%20McCurley%20v.%20Capitol%20Indemnity%20FINAL%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-025-CV%20McCurley%20v.%20Capitol%20Indemnity%20FINAL%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.Section2
 {page:Section2;}
-->











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00025-CV

                                                ______________________________

 

 

                             HUBERT MCCURLEY,
INDIVIDUALLY,

D/B/A STANS BACKHOE
SERVICE, INC., AND

RITA MCCURLEY,
INDIVIDUALLY, Appellants

 

                                                                V.

 

                      CAPITOL INDEMNITY CORPORATION, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 173rd
Judicial District Court

                                                         Henderson
County, Texas

                                                        Trial Court
No. 2008A-490

 

                                                                                                  


 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            Appellants,
Hubert McCurley, Individually, d/b/a Stans Backhoe Service, Inc., and Rita
McCurley, Individually, have filed with this Court a motion to dismiss the
pending appeal in this matter.[1]  Appellants represent to this Court that the
parties have reached a full and final settlement.  In such a case, no real controversy exists,
and in the absence of a controversy, the appeal is moot.

            We
grant the motion and dismiss this appeal.

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          June 15, 2010

Date Decided:             June 16, 2010

 











[1]Originally appealed to the Twelfth Court of Appeals,
this case was transferred to this Court by the Texas Supreme Court pursuant to
its docket equalization efforts.  See Tex.
Govt Code Ann. § 73.001 (Vernon 2005).