John Wayne POWELL, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–82–0265–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 29, 1983.

Occie Tate, Houston, for appellant.

Eleanor Montague, Houston, for appellee.

Before WARREN, COHEN and BULL-OCK, JJ.

## OPINION

COHEN, Justice.

A jury convicted the appellant of burglary of a habitation and assessed punishment at imprisonment for five years.

We reverse the judgment and remand the cause for a new trial because the State was wrongly permitted to impeach a witness with a "have you heard" question suggesting the appellant's involvement in another offense.

The appellant called Ms. Adella Moreno as a witness at the guilt-innocence stage of the trial and the following transpired:

Q. (by appellant's attorney) What kind of person generally is John Powell as far as you are concerned?

A. I used to see him every morning and . . .

At this time the State objected to the question on the grounds that it would permit the witness to give a narrative and the court sustained the objection. The questioning continued:

Q. During the time John Powell resided at the apartment complex where you worked, did you have a pretty friendly relationship?

A. Yes, sir.

Q. Did he appear to you to be a nice person?

A. Yes, sir.

Q. Do you feel that he is a nice person?

A. Yes, sir.

Q. Do you know whether or not he was working at Vetco to your knowledge?

A. No.

Q. Did he create any problems around the apartment complex?

A. No, sir.

The State then cross-examined Ms. Moreno:

Q. Ms. Moreno, how long have you known the defendant here?

A. A year. I worked there a year.

Q. You worked there a year?

A. In February was my anniversary there and I was transferred to my other job.

Q. Have you heard that On February 15, 1982, that John Powell was arrested after leaving the scene of a burglary in Harris County, Texas?

MR. TATE: We would object.

THE COURT: Overruled.

Q. He was found in possession . . .

MR. TATE: Objection.

THE COURT: Overruled.

Q. Found in possession of jewelry? Have you heard that?

A. No.

The nature of the objection was clear to the court because the appellant had objected, outside the hearing of the jury, to improper impeachment of Ms. Moreno immediately before the prosecutor began his questioning. Indeed, the State makes no argument that the objection was too general, since it is obvious that the reason for the objection was well understood by the State and the Court.

■ This case is controlled by the recent decision in *Nixon v. State,* 653 S.W.2d 443 (Tex.Cr.App.1983). The facts of that case and this one are nearly identical. In *Nixon,* the appellant presented the testimony of his supervisor at work during the guilt/innocence stage of the trial. The supervisor testified that Nixon was a hard worker, an ideal employee, and "a very kind guy" who got along well with everyone and often volunteered to help others. On cross-examination the State asked if the witness had heard that Nixon had been convicted of rape. The Court of Criminal Appeals held that the testimony of the supervisor did not make him a reputation witness subject to impeachment by "have you heard" questioning, since he gave no testimony regarding the appellant's general reputation in the community as a peaceable and law-abiding citizen. The court pointed out that the supervisor's testimony was inadmissible and, upon proper objection by the State, should have been excluded. The State's remedy, according to the court, was to object and exclude the testimony, not to rebut it by other inadmissible evidence. "When such improper evidence is admitted, the State may not under the guise of rebuttal present additional improper evidence." *Nixon v. State, supra,* 653 S.W.2d at 444, quoting from *Ward v. State,* 591 S.W.2d 810, 818 (Tex.Cr.App.1978) (en banc). See also *Penagraph v. State,* 623 S.W.2d 341, 343–345 (Tex.Cr.App.1981); *White v. State,* 590 S.W.2d 936 (Tex.Cr.App.1979).

The authorities cited by the State do not require a different result. Indeed, two such cases, *Livingston v. State,* 589 S.W.2d 395 (Tex.Cr.App.1979) and *Els v. State,* 525 S.W.2d 11 (Tex.Cr.App.1975) (reversed judgments of conviction for similar errors).

■ The State also argues that the error was harmless "in view of the overwhelming evidence of the appellant's guilt" and that the evidence could not have injured the appellant at the punishment stage since, according to the State's brief, the jury assessed the statutory minimum of five years in prison for the offense of burglary of a habitation. These arguments are most unpersuasive for at least two reasons. First, the State has not indicated where in the record the "overwhelming" evidence of appellant's guilt may be found. Second, the statutory minimum for the offense of burglary of a habitation was not five years in prison, as appellant received, but probation. The appellant was eligible for probation, applied for probation, and the jury was charged on probation. He presented eleven witnesses at the punishment stage, each of whom recommended that the jury grant probation. The appellant testified under oath that he had never been convicted of a felony "or anything" prior to this case and that he had never "had any problems with the law." Neither of these claims were contested, much less rebutted, by the State. In fact, the State presented no evidence at the punishment hearing other than to re-offer all of the evidence presented during its case in chief.

During deliberations on punishment, the jury sent out three notes to the court. The first asked for the "police arrest record of the accused with the mug shots." This is significant in that there was no evidence that the appellant had ever been arrested for, much less convicted of, of any offense other than the one on trial, except for the prosecutor's suggestion in the "have you heard" question. The court's response was that the appellant's "police arrest record, if any, is not in evidence." This jury was obviously under the impression that this appellant had an arrest record. The jury's second note advised the court that they were deadlocked after "many ballots"; the court advised them to keep deliberating in an attempt to reach an unanimous verdict on punishment.

The jury's third note asked five specific questions concerning the terms and conditions of probation. The jury deliberated on punishment for approximately six hours before assessing the minimum sentence, short of probation. Under these circumstances, the State's assertion on appeal that the error was harmless is plainly without merit. Ground of error one is sustained.

The judgment is reversed and cause is remanded for new trial.