IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1226-05






RICKEY LYNN HARRISON, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE TENTH COURT OF APPEALS


MCLENNAN COUNTY





 Meyers, J., delivered the opinion for a unanimous Court.


O P I N I O N 



 Appellant was convicted of manslaughter and injury to a child. The jury assessed
Appellant's punishment at fifteen years' confinement for manslaughter and twenty years'
confinement for injury to a child. Appellant appealed his conviction, arguing that the trial
court erred under Texas Rules of Evidence (1) 404 and 405 by allowing the State to ask a
defense witness "were you aware" questions about Appellant's prior assault convictions. 

 The court of appeals agreed. Holding that the witness's volunteered and
nonresponsive opinion testimony that Appellant was a "good" and "sweet" person did not
open the door to character evidence, the court reversed the judgment and remanded the case
to the trial court. The State filed a petition for discretionary review, which we granted. We
will reverse. 

Background 

 Appellant was tried for murder and serious bodily injury of his eight-month-old son. 
The baby lived with the baby's mother, grandmother, and mother's brothers and sisters. On
the night before the baby died, Appellant had stayed at the house and slept in the room with
the baby and its mother. The mother testified that, after she put the baby to bed, she left
Appellant in the room with the baby while she took a shower. While she was showering,
she heard the baby crying. When she returned to the bedroom from the shower, the baby
was having a hard time breathing and looked sleepy. A few minutes later, the baby vomited. 
During the night, the baby vomited twice more and fell out of the bed. The next morning,
the grandmother took the mother to school while the baby was at home with one of his
uncles. When the grandmother returned home, she and the uncle decided that they should
take the baby to the doctor, but the baby stopped breathing on the way there. After the baby
stopped breathing, they stopped at a nearby police station and an officer attempted CPR on
the baby. They called 911, and the baby was taken to the hospital where he was later
pronounced dead.

 A forensic pathologist performed an autopsy on the baby and testified that the baby
had died of blunt force trauma to the abdomen, which could be caused by trauma such as a
punch, kick or stomp, but not by a fall. The baby also had many older bruises and injuries. 
The pathologist estimated that the fatal injuries had occurred within fourteen hours of the
baby's death and that such an injury would likely cause a baby to cry, have difficulty
breathing, vomit, and appear sleepy.

 Appellant did not testify, but a statement he had made to police was admitted into
evidence. In the statement, Appellant said that he used to play-fight with his son and would
"softly hit him" in the body. The officer who took the statement testified that Appellant
told him that he could have hit the baby too hard. Another officer testified that Appellant
had mumbled, "I killed him," under his breath while he was being taken to jail. That officer
testified that, after booking Appellant, he asked Appellant, "Now you confessed to killing
your son, didn't you?" Appellant responded that he hadn't said anything like that and didn't
know what the officer was talking about. 

 The defense called two child witnesses who testified that the baby's mother's
youngest sister had told them that she killed the baby. The defense also called several
witnesses who testified about Appellant's relationship with his son. The final defense
witness, Hazel Evans, testified as follows:

Q: Could you tell us how you know [Appellant]?

A: Well, I know [Appellant] through my son, Detrick Evans. They were good friends. He
was a sweet person, he was a good person. He used to stay here nights at my house. He
done watched my kids and I didn't have a problem with him. 

Q: [Appellant] stayed nights at your house?

A: Yes.

Q: Okay. And he'd watch your kids?

A: Uh-huh. He's watched my kids before, played with them, everything.


 After the defense concluded its direct examination of Ms. Evans, the State asked to
approach the bench. The State argued that Ms. Evans's statement that Appellant was a
"good" and "sweet" person was character testimony and had opened the door to cross-examination about Appellant's prior assault convictions. The defense countered that Ms.
Evans's statement had been confined to Appellant's character around her children and did
not open the door to Appellant's prior assault convictions. After reviewing the testimony in
question, the court overruled the defense's objection. The State then posed several "were
you aware" questions concerning Appellant's prior assault convictions.

 On appeal, Appellant argued that the trial court erred in allowing the State to ask
questions concerning his prior assaults. In a criminal case, the general rule is that evidence
of a person's character is not admissible to prove conforming conduct. However, under
Texas Rule of Evidence 404(a), a defendant may bring his character into issue by
introducing character or reputation evidence. Once the defendant has done so, the State
may offer rebuttal character evidence. Rule 405 describes the methods through which a
defendant can offer character evidence and through which the State can offer rebuttal
evidence. Proof may be made by testimony as to reputation or by testimony in the form of
an opinion. Rebuttal evidence may be elicited in the form of " have you heard" or "were
you aware" (2) about specific instances of conduct inconsistent with the character trait
brought into issue by the defendant. The purpose of permitting this cross-examination is
not to discredit the person whose character is in issue, but rather to discredit the testimony
of the character witness. 

 The court of appeals reversed the judgment and remanded the case, holding that the
trial court committed harmful error by permitting the State to ask Ms. Evans "were you
aware" questions. Harrison v. State, 2005 Tex. App. LEXIS 8654 at *24 (October 19,
2005). The court framed the issue before it as "whether [Ms. Evans's] volunteered and
nonresponsive opinion testimony placed [Appellant's] character at issue, thus opening the
door for 'were you aware' questions." Id. at *19. The court cited five cases from the
1980's for the proposition that "[c]ourts [had] found similar witness testimony insufficient
to place the defendant's reputation at issue so as to allow the State to rebut with "have you
heard" questions." Id. at *19-20 (citing Rutledge v. State, 749 S.W.2d 50, 51 (Tex. Crim.
App. 1988), Stephens v. State, 660 S.W.2d 85, 86-87 (Tex. Crim. App. 1983), Nixon v.
State, 653 S.W.2d 443, 444 (Tex. Crim. App. 1983), Smith v. State, 763 S.W.2d 836, 840
(Tex. App.-Dallas 1988, pet ref'd), and Powell v. State, 663 S.W.2d 465, 466-67 (Tex.
App.-Houston [1st Dist] 1983, no pet.)). The chief justice dissented, arguing that the trial
judge did not abuse his discretion in permitting the questions and pointing out that the cases
relied upon by the majority were decided before the Rules of Evidence were enacted. Id. at
*25. 

 The State filed a petition for discretionary review, asking us to determine whether
the court of appeals's reliance upon Rutledge v. State, 749 S.W.2d 50 (Tex. Crim. App.
1988) was appropriate in light of Texas Rule of Evidence 405(a), or whether the court of
appeals erred in holding that the trial court abused its discretion by permitting the State to
test the basis of Ms. Evans's opinion that Appellant is a "good" and "sweet" person.

 The State argues that Ms. Evans was a character witness for the defense and that her
testimony that Appellant was a "good" and "sweet" person opened the door to rebuttal
evidence by the State under Texas Rule of Evidence 405(a). The State asserts that the court
of appeals erred in relying exclusively on pre-Rule 405(a) caselaw, including Rutledge, to
support its decision.

 Appellant responds that Ms. Evans's testimony was innocuous and insufficient to
place Appellant's character in issue. In the alternative, Appellant argues that Ms. Evans's
statements, when viewed in the context of her entire testimony, are limited to the specific
character traits of being a good father and being with children. Therefore, Appellant argues,
the State's rebuttal with prior violent acts did not relate to the pertinent character traits as
required by the Rules of Evidence. At oral argument, Appellant argued that the prior assault
convictions introduced by the State (3) were not pertinent because they were violent acts
toward adults, rather than violent acts toward children.

Analysis

 The court of appeals framed the issue as "whether the defense witness's volunteered
and nonresponsive testimony nonetheless placed Harrison's character at issue, thus opening
the door for 'were you aware' questions." Harrison, 2005 Tex. App. LEXIS 8654 at *19. 
The court of appeals held that the testimony did not place Appellant's character at issue
through Ms. Evans's testimony. The court stated that other courts have found similar
witness testimony insufficient to place the defendant's reputation at issue, citing Rutledge,
749 S.W.2d at 51, Stephens, 660 S.W.2d at 86-87, Nixon, 653 S.W.2d at 444, Smith, 763
S.W.2d at 840, and Powell, 663 S.W.2d at 466-67. These cases are not analogous to the
case before us. In each of the cases, the questions were found to be improper because they
were reputation questions asked of a character witness, not because the witness testimony
was insufficient to place defendant's character at issue. At the time these cases were
decided, opinion witnesses could only be impeached with "did you know" questions, not
with "have you heard" questions. See Smith, 763 S.W.2d at 843 (citing Rutledge, 749
S.W.2d 50). Further, each of these cases was decided before the Texas Rules of Evidence
were adopted, so none address the proper use of rebuttal character evidence under Rule
405(a). The court of appeals did not note this important distinction in its analysis.

 The Smith case is somewhat more applicable than the others. In Smith, one issue
was the nonresponsiveness and volunteered nature of a witness's statement. The direct
examination of a defense eyewitness was focused solely on the events he had witnessed the
evening of the crime. Smith, 763 S.W.2d at 840. On cross, the State questioned the
witness about his ability to remember the events of that night and then asked the witness if
he knew the defendant in the case. The witness responded, "Yes, ma'am. I've been knowing
him for about a whole year. I have never known him to be in any kind of trouble." Id. The
defense immediately objected to the nonresponsiveness of the answer. The trial court
permitted the State to continue, but when the State began a "have you heard" question, the
defense again objected, and the court heard the objection outside the jury's presence. Id. at
842. The defense argued that the nonresponsive answer should be removed from the jury's
consideration. The trial court overruled the defense objection, and the State asked several
"have you heard" questions of the witness. Id. 

 The court of appeals reversed the case and remanded for a new trial because the
defense witness's volunteered response did not open the door to "have you heard"
questions. However, the court limited its holding to the facts of the case, explaining that
the witness's statement had not opened the door because: the defense counsel stated that he
had instructed the witness not to volunteer any information; the defense tried to "shut the
door" by requesting that the answer be stricken from the record and disregarded by the jury;
and because the State improperly posed "have you heard" rather than "did you know"
questions to an opinion witness. Smith, 763 S.W.2d at 843. 

 The Smith court's reasoning for holding that the character of the defendant was not
brought into issue by the nonresponsive statement does not apply to this case. None of the
reasons listed by the Smith court for its decision are present in the case before us. The
defense in our case never stated that he had instructed the witness not to volunteer
testimony, nor did he request that Ms. Evans's testimony be stricken from the record and
disregarded by the jury. Further, as stated above, in Smith, the State rebutted the witness's
nonresponsive opinion testimony with "have you heard" questions. In our case, the opinion
witness was properly asked "did you know" questions. 

 In the case before us, the court of appeals stated that the issue was whether Ms.
Evans's opinion was volunteered and not given in response to the question posed by the
State. However, none of the cases relied upon by the court of appeals support its holding
that Ms. Evans's nonresponsive and volunteered testimony did not open the door to
character evidence. 

 Under Rules 404 and 405, if the defendant offers evidence of his good character,
the prosecution can introduce its own character evidence to rebut the implications of the
defendant's character evidence. There is no nonresponsiveness exception to this right. Ms.
Evans offered evidence of Appellant's character through her statement that Appellant was a
"good" and "sweet" boy. Although Appellant did not intentionally elicit Ms. Evans's
character testimony, the nonresposiveness of Ms. Evans's statement does not change the
fact that it was character evidence offered by a defense witness. (4) The trial court correctly
permitted the State to rebut the character evidence introduced by Ms. Evans with the
evidence of Appellant's prior assault convictions and citations. 

Conclusion

 Because the court of appeals incorrectly analyzed the issue, the decision is reversed,
and the conviction is upheld.


 Meyers, J


Delivered: September 26, 2007

Publish

1. All subsequent references to "Rule" or "Rules" refer to the Texas Rules of Evidence, unless
otherwise stated.
2. "Were you aware" questions are more commonly phrased as "did you know." 
3. The State asked Ms. Evans whether she was aware that Appellant had been sent to juvenile
detention after an arrest for assault in 2001, that he had been adjudicated for assault on a public servant
at Waco High School in 2002, and that he had been given citations for disrupting class in 2002.
4. We do not address whether the outcome would be different if the defense had objected to the
nonresponsive statement or asked that it be stricken from the record and removed from the jury's
consideration.