NO. 07-10-0461-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JULY 25, 2011
_____

DEMETRA DESHONNE MITCHELL,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 286TH DISTRICT COURT OF HOCKLEY COUNTY;

NO. 10-04-7058; HONORABLE PAT PHELAN, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., CAMPBELL, J., and BOYD, S.J.[1]

Demetra Deshonne Mitchell was convicted after a jury trial of possession of a controlled substance (cocaine) with intent to deliver in a drug free zone. In seeking to reverse that conviction, she contends 1) the trial court erred in admitting extraneous offenses after a witness had allegedly opened the door to character evidence by describing appellant as a "working class citizen," 2) the trial court erred in refusing to admit evidence of threats allegedly made by the State's main witness against other

_____

[1]John T. Boyd, Senior Justice, sitting by assignment.

witnesses in the case, and 3) appellant received ineffective assistance of counsel when her attorney failed to recognize that the door had been opened to the admission of the aforementioned extraneous offenses and failed to request a limiting instruction as to that evidence. We affirm the judgment.

*Background*

On October 27, 2009, Vincentia Johnson, appellant's cousin, agreed to assist Officer Shaun Wilson in purchasing crack cocaine from appellant in exchange for his help in reducing or dismissing a drug charge pending against Vincentia. She called appellant to confirm that appellant had cocaine at her residence. Officers then searched Vincentia and her car, and she was outfitted with an audio recording device. She was also given $120 to purchase a "bill," which is street language for $100 of drugs. Vincentia was followed by officers to appellant's residence where she was observed entering it. When she came out, she had cocaine and $20 on her.

*Issue 1 – Admission of Character Evidence*

In her first issue, appellant contends that the use of the phrase "working class citizen" to describe her did not open the door to admission by the State of evidence impugning her character.[2] The trial court disagreed, which resulted in the State proffering evidence of her involvement in various extraneous offenses. We overrule the issue.

_____

[2]The evidence of extraneous offenses admitted by the State consisted of testimony that appellant had been arrested twelve times. Those arrests related to the offenses of injury to a child, assault causing bodily injury, aggravated assault causing serious bodily injury, multiple thefts, multiple drug possessions, and assault. Appellant had also been in the penitentiary for seven years and had her probation revoked.

The phrase in question was used by a defense witness, Jakiki Garrett, who was living with appellant at the time of the offense and being examined by defense counsel. Its use arose during the following exchange:

Q. During the time you stayed with [appellant], did you ever see drugs or a scale?

A. No.

Q. If you would have seen drugs, what would you have done?

A. I couldn't have been around it.

Q. Why not?

A. I just - - I just got out of trouble for that, you know. And, you know, to my common knowledge, you know, I was trying to change myself, and I was working.

I seen her go to work every day. We had been at the house every day after work. She let me in. I took my showers, or whatever. She drove back and forth to work. As far as I'm concerned, she was a *working-class citizen.*

Q. She was what?

A. She was a *working-class citizen*.

(Emphasis added).

We review the trial court's decision to admit or exclude evidence under the standard of abused discretion. *Martin v. State,* 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). Thus, we cannot hold that any error occurred unless the decision fell outside the zone of reasonable disagreement. *Jordan v. State,* 271 S.W.3d 850, 855 (Tex. App.– Amarillo 2008, pet. ref'd).

Next, we note that a party opens the door to otherwise inadmissible evidence by leaving a false impression with a jury that invites the other side to respond. *Hayden v.*

3

*State,* 296 S.W.3d 549, 554 (Tex. Crim. App. 2009). According to appellant, referring to her as "a working class citizen" was not a comment upon her good character but rather conveyed the impression that she simply was someone who had a job and maintained the social status of "working class."

Admittedly, the statement is subject to interpretation. One such interpretation was that mentioned by appellant.[3] Another, was the allusion to her being an honest, law abiding, and hard-working person rather than a drug dealer. Moreover, before the comment was made, the witness had testified about how appellant was his "friend," how he had recently been released from jail, "had nowhere to go," and how appellant "took [him] in" while he was "getting on [his] feet." He had also attempted to exculpate appellant and discredit the testimony of Vincentia by denying that drugs and drug paraphernalia were present when she was there. Given these circumstances, one could reasonably infer that the witness was attempting to help his friend by portraying appellant as someone of good character. At least, interpreting the use of the phrase in such a manner would fall within the zone of reasonable disagreement. Therefore, the trial court did not err in concluding that appellant's character for being honest and law-abiding had been placed in debate.[4] *See Bass v. State,* 270 S.W.3d 557, 563 (Tex. Crim. App. 2008) (holding that argument that the defendant was a pastor and minister and "the real deal and the genuine article" opened the door to extraneous offenses); *Harrison v. State,* 241 S.W.3d 23, 27-28 (Tex. Crim. App. 2007) (holding that testimony

---

[3]Garrett testified later that he called appellant a "working class citizen" because he had "always known her to have a job."

[4]To the extent that appellant also argues that the evidence admitted to rebut the allegedly false impression was excessive, no objection expressing that complaint was uttered at trial. So, it was not

4

that the defendant was a "good" and "sweet" boy opened the door to extraneous offenses); *Fuentes v. State,* 991 S.W.2d 267, 280 (Tex. Crim. App. 1999) (holding that answers to questions as to whether the witness had ever seen a person misbehave or cause trouble clearly asked about character).

*Issue 2 – Evidence of Threats*

Via his second issue, appellant contends that the trial court should have allowed her to proffer evidence illustrating that Vincentia threatened to assault any witness testifying on appellant's behalf. The evidence allegedly affected Vincentia's credibility and, therefore, was admissible. We overrule the issue.

The possible animus, motive, ill will, or bias of a prosecution witness is not irrelevant, and the defendant is entitled, subject to reasonable restrictions, to show any relevant fact that might tend to establish the same. *Billodeau v. State,* 277 S.W.3d 34, 42-43 (Tex. Crim. App. 2009);[5] TEX. R. EVID. 613(b). Yet, whether this rule obligated the trial court to admit evidence of the threat is not a matter we need to decide. This is so because appellant was not harmed by exclusion, even if the trial court's decision was wrong.

That which appellant sought to do with the evidence was done via other means. Indeed, we are told by appellant that Vincentia's purported threat established a bias favoring the State. And, that bias arose from her desire to forego incarceration for a

---

preserved for review. *Heidelberg v. State,* 144 S.W.3d 535, 537 (Tex. Crim. App. 2004) (holding that the grounds asserted on appeal must comport with those mentioned at trial).

[5]Appellant relies upon *Bilodeau v. State,* 277 S.W.3d 34 (Tex. Crim. App. 2009) in support of her argument that the evidence is admissible. However, that case involved a threat made by a child complainant prior to a molestation trial to falsely accuse two neighbors of molestation. *Id.* at 38. Those facts are not analogous to those before us.

separate offense and otherwise remain free to care for her newly born child. Apparently, the State or police had struck a deal with her to forego prosecution if she became a confidential informant. This, undoubtedly, was an offer she thought desirable since she had already lost one child while she served a previous stint in prison. The deal allowed her to care for the new one. Moreover, all this information, save for evidence of the threat, was before the jury. So, appellant not only had but also pursued the opportunity to discredit Vincentia by showing that she had a reason for working with and testifying favorably for the State.

*Issue 3 – Ineffective Assistance of Counsel*

Finally, appellant contends that her counsel was ineffective by eliciting testimony that opened the door to the character evidence addressed under issue one and in failing to request a limiting instruction with respect to that evidence. We overrule the issue.

To prove a claim of ineffective assistance, one must establish not only that counsel's performance was deficient but that she suffered prejudice as a result of it. *Cannon v. State,* 252 S.W.3d 342, 348-49 (Tex. Crim. App. 2008). In determining whether that burden has been met, we presume (until rebutted) that counsel had legitimate strategies for his actions, *Mata v. State,* 226 S.W.3d 425, 431 (Tex. Crim. App. 2007), and that presumption cannot generally be overcome absent evidence in the record of the attorney's reasons for his conduct. *Ex parte Niswanger,* 335 S.W.3d 611, 615 (Tex. Crim. App. 2011).

Initially, we note that appellant's question to the witness related to what the witness would have done if he had observed drugs in appellant's house. It was not designed on its face to elicit the response that appellant was a "working class citizen."

6

*See Harrison v. State,* 241 S.W.3d at 27 (noting that defendant's counsel did not intentionally elicit testimony that defendant was a "good" and "sweet" person). Indeed, it can be said that by asking the question, "she was what?" counsel was surprised by the witness' statement. We, therefore, cannot say that he performed deficiently by asking the question he did or by seeking to open the door to adverse character evidence.

We further note that the record fails to reveal why counsel did not ask that the witness' comment be struck or why he did not request a limiting instruction of any type *viz* the jury's consideration of the evidence of extraneous offenses. As for the former, it may be that counsel initially viewed the purportedly unexpected comment as favoring his client. As for the latter accusation of deficient conduct, counsel may have opted to remain silent to avoid placing further attention upon the evidence in question. *Hill v. State,* 303 S.W.3d 863, 879 (Tex. App.–Fort Worth 2009, pet. ref'd) (stating that counsel is not necessarily deficient in failing to request an instruction with respect to extraneous offenses because it is possible he did not want to draw further attention to those offenses). Yet, these explanations for counsel's conduct are mere guesses since the record omits evidence as to his motives or strategies. And, because the latter could be legitimate, we cannot say that appellant proved a case of ineffective assistance.

The judgment is affirmed.

Brian Quinn
Chief Justice

Do not publish.

7