In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00227-CR

                                                ______________________________

 

 

                              JUAN CARLOS HERNANDEZ,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 336th
Judicial District Court

                                                             Fannin County, Texas

                                                      Trial Court No. CR-10-23406

 

                                                   
                                               

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                          Opinion by Justice Carter








                                                                   O P I N I O N

 

            A Fannin County jury convicted Juan Carlos Hernandez of
deadly conduct[1] and assessed
punishment at ten years’ imprisonment in the Texas Department of Criminal
Justice—Institutional Division.[2]  The sole issue on appeal is whether the trial
court erred in permitting evidence of a previous conviction to be admitted
during the guilt/innocence phase of the trial. 
We affirm the judgment of the trial court.  

I.          Background

 

            On the
evening of March 13, 2010, Enrique Garza walked to Hernandez’s home to ask for
help in resolving a dispute Garza had earlier in the evening with an individual
who allegedly attacked Garza.  Hernandez
agreed, and they left Hernandez’s home in a gold Lincoln Towncar
owned by Amanda Morrow.  Garza was with
Hernandez in the car when they drove by the house where the altercation had
taken place earlier that evening.  At
trial, Garza testified that Hernandez fired three shots from the driver’s side
window of the vehicle in a residential area in the direction of four people who
were sitting on a porch.[3]

II.        Extraneous Offense Evidence

 

            At trial, Morrow testified
on cross-examination by the defense that she lived with Hernandez in his home
for approximately two months, along with her four children.  The State claims the following testimony opened
the door to the introduction of evidence regarding Hernandez’s prior felony
conviction resulting in imprisonment:

            Q.        Ms. Morrow, how long were you living
with Juan in his home?

 

            A.        Maybe two months.

 

            Q.        And your four children were there?

 

            A.        Most of the time.

 

            Q.        And how did he treat you?

 

            A.        Fine.

 

                        [State]:             
Objection, relevance.

 

                        THE
COURT:  Overruled.  You may answer.

 

            A.        [Morrow] He was good to me and my kids.

 

            Q.        To the children also?

 

            A.        Yes, ma’am.

 

            Q.        And he played games on the
computer.  Is that what you said?

 

            A.        Yes, ma’am.

 

            Q.        Was he drunk --

 

                        .
. . .

 

            A.        No, ma’am.

 

                        .
. . .

 

            Q.        Has he ever hit you?

 

            A.        No, ma’am.

 

            Q.        Has Rubin ever hit you?

 

            A.        Yes, ma’am.

 

                        [State]:             
Objection, relevance.

 

                        THE
COURT:  Sustained.

 

            Q.        What kind of a person would you say Juan
is?

            

                      A.        He was -- he was a good guy.  He was really nice to me and my kids.  He treated us well.

 

            Outside
the presence of the jury, the State asked the trial court to allow a hearing to
present evidence of Hernandez’s prior felony conviction.  Morrow testified that she was aware that
Hernandez spent time in prison, but she did not know what offense he
committed.  She was aware that Hernandez
and Garza were in prison at the same time. 
The State argued that the defense attempted to “place a false impression
in the mind of the jury that, quote, Mr. Hernandez is a good guy, and I would
like the opportunity to rebut that presumption with this type of evidence.”  The defense contended that Morrow’s belief
that Hernandez was a “good guy” did not imply that he had no prison record.  The trial court overruled the defense
objection to the admission of the prior conviction, and the State then
questioned Morrow about Hernandez’s prior record.[4]

            In his sole appellate point,
Hernandez contends the trial court erred by overruling his objection and
permitting the State to elicit testimony regarding his prior conviction.[5]  Hernandez contends Morrow’s testimony does
not amount to an assertion that Hernandez did not have prior trouble with the
law.  Rather, such testimony merely
established that Morrow believed Hernandez was a “good guy.” Hernandez
maintains that evidence of a previous felony conviction does not counter that
testimony.  The State contends the
evidence was admissible to rebut and correct the false impression that
Hernandez would never engage in criminal conduct.

            As
a general rule, specific acts of misconduct may not be introduced to impeach a
party or a witness.  See Prescott v. State, 744 S.W.2d 128, 130 (Tex. Crim. App.
1988).  However, when a party produces
evidence tending to create a false impression of his law-abiding behavior, he
opens the door on his otherwise irrelevant past criminal history, and opposing
counsel may introduce evidence tending to rebut the false impression.  Delk v.
State, 855 S.W.2d 700, 704
(Tex. Crim. App. 1993), overruled on
other grounds by Ex parte Moreno, 245 S.W.3d 419, 425 (Tex. Crim. App.
2008); Prescott, 744
S.W.2d at 131; Abshire v. State, 62 S.W.3d 857, 861 (Tex. App.—Texarkana
2001, pet. ref’d); Wells v. State, 880 S.W.2d 185, 189 (Tex. App.—Texarkana
1994, pet. ref’d); Monkhouse
v. State, 861 S.W.2d 473
(Tex. App.—Texarkana 1993, no pet.).  In
order for this exception to apply, however, the defense must unambiguously
create a false impression of law-abiding behavior, thereby permitting introduction
of evidence of past criminal history.  See Delk, 855
S.W.2d at 704–05.   

            Because the
admission of evidence is a matter within the discretion of the trial court, the
admission of evidence is reviewed for an abuse of discretion.  Salazar
v. State, 38 S.W.3d 141, 153
(Tex. Crim. App. 2001).  The trial court
abuses its discretion if its decision to admit a prior conviction lies outside
the zone of reasonable disagreement.  Theus v. State, 845 S.W.2d 874, 881 (Tex.
Crim. App. 1992).  

            We must therefore
initially determine whether the defense’s cross-examination of Morrow “opened
the door” to permit evidence of Hernandez’s prior conviction.  To determine whether the evidence was
admissible, we consider the testimony in relation to the question asked,
examine how broadly the question asked could be interpreted, and analyze the
relationship between the question asked and the major substantive issues in the
trial.  See, e.g., Delk,
855 S.W.2d at 704–05; Grant v. State,
247 S.W.3d 360, 368 (Tex. App.—Austin 2008, pet. ref’d).  

            The context
of the discussion on cross-examination did not concern Hernandez’s past
criminal conduct.  Rather, the discussion
centered on how Hernandez treated Morrow and her children, leading Morrow to
conclude, because Hernandez treated them well, that he was a “good guy.”  Morrow was asked her opinion of the kind of
person Hernandez was.  Morrow responded
with her opinion that Hernandez was a “good guy.”  We do not believe this testimony can be
interpreted so broadly as to imply that Hernandez never engaged in criminal
conduct.  

            Even
though this testimony did not create a false impression of law abiding conduct,[6] and
was therefore not admissible on that basis, an evidentiary ruling will be
upheld on appeal if it is correct on any theory of law that finds support in
the record.  Gonzalez v. State, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006); McDuff v. State, 939 S.W.2d 607, 619 (Tex.
Crim. App. 1997) (“trial court’s decision will be sustained if it is correct on
any theory of law applicable to the case, especially with regard to the
admission of evidence”). 

            A
witness who testifies to a defendant’s good character may be cross-examined
with relevant and specific instances of misconduct that might affect the
opinion of the witness.  Tex. R. Evid. 405(a);[7] Wilson v. State, 71 S.W.3d 346, 350
(Tex. Crim. App. 2002).  The court held
that because a witness testified about his opinion of the defendant—as in this
case—the State was then entitled to ask questions about specific criminal acts.[8]  Such questions can “demonstrate that the
witness has a low standard for what he considers good character by inquiring
into prior specific instances of conduct that are inconsistent with the
particular character trait.”  Wheeler v. State, 67 S.W.3d 879, 886
n.16 (Tex. Crim. App. 2002).

            More
recently, a similar situation was presented in Harrison v. State, 241 S.W.3d 23 (Tex. Crim. App. 2007).  In Harrison,
a defense witness testified that the defendant “was a sweet person, he was a
good person” and that “he done watched my kids and I didn’t have a problem with
him.”  Id. at 25.  In reliance on
Rules 404 and 405 of the Texas Rules of Evidence, the court stated, “Although
Appellant did not intentionally elicit [the witness’] character testimony, the nonresponsiveness of [the witness’] statement does not
change the fact that it was character evidence offered by a defense
witness.”  Id. at 27; see Tex. R. Evid.
404, 405.[9]  Accordingly, cross-examination regarding
whether the witness was aware of appellant’s prior assault convictions was
permitted.  

            Here,
Morrow was asked by defense counsel, “[W]hat kind of person would you say Juan
is?”  Her direct response that Hernandez
was “really nice” to Morrow and her children, that he treated them well, and
that he was a “good guy” was undoubtedly testifying to her opinion of
Hernandez’s good character.  Therefore,
it was permissible for the State to test her knowledge about specific instances
of conduct by asking “did you know” questions. 
See Wilson, 71 S.W.3d at 350.[10]  We find no error in the admission of this
testimony.[11]  

III.       Conclusion

            We
affirm the judgment of the trial court.

 

 

 

 

                                                                        Jack
Carter

                                                                        Justice

 

Date
Submitted:          August 8, 2011

Date
Decided:             September 7, 2011

 

Publish

 











[1]See Tex.
Penal Code Ann. § 22.05(b) (West 2011).

 





[2]Punishment
was enhanced based on a prior felony conviction. 

 





[3]Because
this appeal does not involve a challenge to the sufficiency of the evidence,
the factual background is abbreviated.





[4]                               Q.            You know that Juan Hernandez has
been to prison.  Correct?

                                A.            Yes.

                                Q.            Yes?

                                A.            Yes,
sir.

                                Q.            Do
you know about the time frame he went to prison?

                                A.            No,
sir.

                                Q.            Do
you know if he and Ricky [Garza] were in prison together?

                                A.            I don’t know if they were together
or not - - they were both arrest - - they were both in jail at the same time.

                                Q.            Okay.  And they were friends before they went to
prison?

                                A.            Yes,
sir.

                                Q.            And
they have been friends since they went to prison?

                                A.            Yes,
sir.

                                Q.            Do
you know why Juan went to prison?

                                A.            No,
sir.

                                Q.            Okay.

 





[5]At
trial, the sole objection to extraneous offense evidence was simply that Morrow’s
testimony did not open the door to such evidence.  No Rule 403 objection was made.  See Tex. R. Evid.
403.  On appeal, Hernandez
additionally maintains that the probative value of the evidence was
substantially outweighed by its prejudicial effect.  Because this objection was not raised in the
trial court, we may not consider it on appeal. 
Tex. R. App. P. 33.1(a)(1)(A);
Montgomery v. State, 810 S.W.2d 372,
389 (Tex. Crim. App. 1990) (op. on reh’g) (objection
to relevant evidence under Rule 403 must be made in trial court).





[6]Cases
in which the State’s evidence was admissible because the defense opened the
door by creating a false impression of law abiding or nonviolent conduct
indicate that the false impression must be much clearer than the testimony
here.  For example, defense testimony in
a case involving aggravated sexual assault of a child that the defendant was
not the kind of person who would sexually abuse a child, and that he never had
an opportunity to do so in his home because no room was ever locked, and
friends and family members freely came in and out of the house or were always
in a position to see what transpired in the house, opened the door to
extraneous evidence of sexual abuse.  Abshire, 62
S.W.3d at 860–61; see also Gilmore v. State, 493 S.W.2d 163, 164
(Tex. Crim. App. 1973) (denial of ever having committed an armed robbery
rendered police testimony concerning a previous robbery permissible); Alexander v. State, 476 S.W.2d 10, 11
(Tex. Crim. App. 1972) (defendant’s testimony opened door for State’s
impeachment evidence to correct false impression when he testified that he “had
not been in trouble before”); Carter v.
State, No. 06-02-00174-CR, 2004 WL 726252, at *3 (Tex. App.––Texarkana
April 6, 2004, pet. ref’d) (mem.
op., not designated for publication) (testimony that defendant and victim and
friends never had altercations with pipes or weapons did not leave false
impression that defendant had never committed violent act).  In order to open the door, there must be more
than an implication that the defendant abides by the law; the testimony must in
some way convey the impression that he or she has never committed a crime.  Theus, 845 S.W.2d at 879. 






[7]Rule
405 of the Texas Rules of Evidence provides:

 

                (a)           Reputation or Opinion.  In all cases in which evidence of a
person’s character or character trait is admissible, proof may be made by
testimony as to reputation or by testimony in the form of an opinion. In a
criminal case, to be qualified to testify at the guilt stage of trial
concerning the character or character trait of an accused, a witness must have
been familiar with the reputation, or with the underlying facts or information
upon which the opinion is based, prior to the day of the offense.  In all cases where testimony is admitted under
this rule, on cross-examination inquiry is allowable into relevant specific
instances of conduct.

 

                (b)           Specific Instances of Conduct.  In cases in which a person’s character or
character trait is an essential element of a charge, claim or defense, proof
may also be made of specific instances of that person’s conduct.

 

Tex. R. Evid. 405.

 





[8]Although
Wilson involved testimony at the
punishment phase, the Texas Court of Criminal Appeals’ reasoning applies in
this situation.  





[9]Evidence
of a person’s character is generally not admissible to prove conforming
conduct.  When a defendant brings his or
her character into issue by introducing character or reputation evidence, the State
may then offer rebuttal character evidence. 
Tex. R. Evid.
404(a), 405(a).  

 





[10]The
State’s questions were framed in terms of “do you know . . .”.

 





[11]Even
assuming this evidence was erroneously admitted, such error would have been
harmless.  Maria Hernandez (Hernandez’s
sister) was questioned, without objection, much more extensively during the
guilt/innocence phase of the trial regarding Hernandez’s past criminal
history.  This testimony established that
Maria was aware that Hernandez was previously imprisoned; she was not aware
that Hernandez was convicted in 2001 in Fannin County
for unlawfully carrying a firearm; she was aware that Hernandez was convicted
in 2001 for possession of marihuana and was placed on juvenile probation in
1999 for the unauthorized use of a motor vehicle.  “Admission of inadmissible evidence is
harmless error if other evidence that proves the same fact that the
inadmissible evidence sought to prove is admitted without objection at trial.”  Broderick
v. State, 35 S.W.3d 67, 75 (Tex. App.––Texarkana 2000, pet. ref’d) (citing Willis
v. State, 785 S.W.2d 378, 383 (Tex. Crim. App. 1989); Poole v. State, 974 S.W.2d 892, 899 (Tex. App.––Austin 1998, pet. ref’d)).  Given that
the jury was provided with a wealth of information regarding Hernandez’s
criminal history and incarceration during the State’s questioning of Maria, to
which defense counsel made no objection, the State’s brief questioning of
Morrow regarding Hernandez’s imprisonment would not have been harmful.