COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

FREDDY GONZALEZ,             §

            Appellant,       §

v.                          §

THE STATE OF TEXAS,        §

            Appellee.        §

                               §

No. 08-11-00147-CR

Appeal from the

120th District Court

of El Paso County, Texas

(TC# 20100D03505)

## O P I N I O N

Freddy Gonzalez appeals the trial court's judgment convicting him of murder and sentencing him to 35 years' imprisonment. Raising two issues on appeal, Gonzalez argues that the trial court failed to apply the law of self-defense correctly in the jury charge and erroneously admitted extraneous offense evidence. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Gonzalez killed his brother-in-law, Hector Saul Cifuentes, by stabbing him in the heart with a knife. Indicted and tried for murder, Gonzalez testified that he did not know how Cifuentes was stabbed, but that it must have occurred when Cifuentes was pulling Gonzalez's knife from his right-front pocket while they both struggled for its control. The trial court's charge instructed the jury on the law of self-defense and the use of deadly force in self-defense. One of the application paragraphs in the charge concerning the law of self-defense read:

> You are further instructed, however, that if you believe from the evidence beyond a reasonable doubt that at the time and place in question, . . . CIFUENTES, was not using or attempting to use unlawful force on the Defendant, or if you believe beyond a reasonable doubt that the State has proven that the facts giving

rise to the presumption of reasonable belief that force was immediately necessary do not exist, then you will find against the Defendant on his plea of self-defense, and say by your verdict 'guilty' (Verdict Form 'A,'), and not consider any other charges below.

Although Gonzalez objected to other parts of the charge, he did not object to this paragraph. The jury convicted Gonzalez of murder.

## SELF-DEFENSE INSTRUCTION

In his first issue, Gonzalez argues that the application paragraph identified above was erroneous because it "affirmatively instructed the jury to convict [him] without finding first that he had not acted in self-defense," thereby egregiously harming him by "depriv[ing] [him] altogether of the self-defense theory which was best supported by his version of the events." According to Gonzalez, the self-defense theory that best supported his version of events was "his belief that [Cifuentes] was attacking him with deadly force[;] . . . [a] belief ar[ising] from the fact that [Cifuentes] pulled a knife from his pocket during their struggle;" it was not the statutory presumption that his belief was reasonable. Gonzalez thus contends that the trial court erred by instructing the jury to convict him if the jury found that the State had disproved the statutory presumption without requiring the jury to find first that his subjective belief was not reasonable.

### Standard of Review

We review charge error on appeal by determining whether error occurred, and if so, whether that error caused sufficient harm to require reversal. *Ngo v. State*, 175 S.W.3d 738, 744 (Tex.Crim.App. 2005). The degree of harm required for reversal depends on whether the defendant preserved error at trial. *Ngo*, 175 S.W.3d at 743. When the defendant preserves error at trial by timely objection, the record must establish only "some harm" to obtain reversal. *Id*. By contrast, when, as here, the defendant fails to preserve error at trial, the record must

2

demonstrate "egregious harm" to obtain reversal.[1]  *Id.* at 743-44.  Egregious harm is defined as harm that affects the very basis of the case, deprives the defendant of a valuable right, vitally affects the defensive theory, or makes a case for conviction clearly and significantly more persuasive.  *Id.* at 750.  In other words, egregious harm denies the defendant a fair and impartial trial.  *Id.*  In determining whether the defendant suffered actual harm, not just theoretical harm, we review:  (1) the entire charge; (2) the state of the evidence, including the contested issues and the weight of the probative evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the record.  *Id.* at 750 n.48.

## *Discussion*

Assuming, without deciding, that the trial court failed to apply the law of self-defense correctly, Gonzalez has nevertheless failed to demonstrate egregious harm as a result of the alleged charge error.[2]

### 1.  The Jury Charge

Considering the relationship between the abstract portion of the charge and all of its application paragraphs, the jury charge ameliorated the purportedly erroneous application paragraph of which Gonzalez complains and did not, as a whole, misinform the jury on the law of

---

[1] As noted above, Gonzalez failed to object to the application paragraph contained in the trial court's charge and set forth above.  This is the same application paragraph that he now complains of on appeal.

[2] Because the trial court's inclusion of a defensive issue in the charge signals to the jury that such a defense is "'the law applicable to the case'[,] . . . any flaw in the charge [regarding the defense] amounts to an error in the charge . . . ." *Barrera v. State*, 982 S.W.2d 415, 416 (Tex.Crim.App. 1998).  A defendant is entitled to use deadly force in self-defense if he or she:  (1) would be justified in using non-deadly force as established by Section 9.31 of the Penal Code; and (2) reasonably believes that deadly force is immediately necessary to protect him against unlawful deadly force or to prevent the imminent commission of specified violent crimes.  *See* TEX. PENAL CODE ANN. § 9.32(a) (West 2011).  A defendant's entitlement to use deadly force against an assailant is based upon what he reasonably believed the danger was, as he reasonably apprehended it, not upon whether his assailant was actually using or attempting to use unlawful deadly force.  *Hamel v. State*, 916 S.W.2d 491, 493 (Tex.Crim.App. 1996); *Semaire v. State*, 612 S.W.2d 528, 530 (Tex.Crim.App. 1980); *Jones v. State*, 544 S.W.2d 139, 142 (Tex.Crim.App. 1976).

self-defense.   Accordingly, the jury charge as whole supports the conclusion that Gonzalez was not egregiously harmed as a result of the alleged error.

Gonzalez concludes that he suffered egregious harm, but fails to identify what that harm is. The State contends that the charge, when viewed as a whole and not in isolation, "sufficiently and correctly informed the jury of the conditions under which [it] [was] to find [Gonzalez] not guilty[.]"

In so arguing, the State directs our attention to two separate parts of the charge.   The first is the abstract portion of the charge, which correctly defines self-defense and the use of deadly force in self-defense.   With respect to this portion of the charge, Gonzalez concedes that "the basic law of self-defense was correctly defined in the abstract as to the use both of ordinary force and of deadly force."   He further concedes that "[i]n most respects, the court's charge was unobjectionable."   The second is the first application paragraph in the charge, which correctly applies the law of self-defense to the facts of the case by informing the jury that it was required to find Gonzalez not guilty if it believed that he had a reasonable belief that deadly force was immediately necessary to protect himself from Cifuentes.   In its entirety, this paragraph read:

> But [if] you further find from the evidence, or have a reasonable doubt thereof, that . . . GONZALEZ reasonably believed or is presumed to have reasonably believed as viewed from his standpoint alone that deadly force when and to the degree used, if it was, was immediately necessary to protect himself against the use or attempted use of unlawful deadly force by . . . CIFUENTES, you will acquit . . . GONZALEZ and say by your verdict 'not guilty' . . . .

With respect to this paragraph, Gonzalez admits that he would have had "no real cause [for] complaint" had the trial court stopped its application of the law to the facts at this juncture and not continued.

## 2.   The Contested Issues/Weight of Probative Evidence

4

The weight of the probative evidence that the State developed at trial refuting Gonzalez's claim of self-defense was such that, notwithstanding the purportedly erroneous application paragraph of which Gonzalez complains, the jury could have found beyond a reasonable doubt that Gonzalez did not have a reasonable belief that deadly force was required. This factor therefore supports the conclusion that Gonzalez was not egregiously harmed as a result of the alleged error.

Although Gonzalez testified to his version of events regarding how Cifuentes was stabbed, his testimony was uncorroborated, and, more importantly, was contradicted by evidence the State developed at trial. The State's evidence included the testimony of two unbiased witnesses. Jose Luis Medina, a next-door neighbor of the Gonzalez family who did not know the family well, testified that he saw Cifuentes and Gonzalez arguing in the backyard and then begin boxing. He did not testify that they were grappling with one another, as Gonzalez and his brother, Luis Gonzalez, testified, nor did he testify that he saw Gonzalez and Cifuentes struggling over a knife, as Gonzalez testified. Likewise, Manuel Francisco Mendoza-Castillo, a friend of Gonzalez and his brothers who drank with them and Cifuentes that day, testified that Gonzalez and Cifuentes came to blows after arguing and did not struggle over a knife as Gonzalez testified.

According to Medina, when Cifuentes and Gonzalez stopped boxing and separated, Gonzalez reached toward his right-front pocket, moved his hand toward Cifuentes's chest, and "poke[d]" Cifuentes. Although Medina testified that he did not witness Gonzalez pull a knife from his pocket, he testified that he saw Gonzalez holding a knife after he had poked Cifuentes in the chest. Similarly, Mendoza-Castillo did not testify that he saw Gonzalez stab Cifuentes. Rather, he testified that Cifuentes stumbled away bleeding after the fight stopped, and, when Cifuentes so stumbled, he saw Gonzalez holding a bloody kitchen knife in his hand.

5

Although Mendoza-Castillo testified that he did not know how Gonzalez came to possess the knife because Gonzalez never told or showed anyone he had a knife, both he and Medina testified that Cifuentes did not have a gun, knife, or rock in his hands while fighting Gonzalez.[3] Luis Gonzalez testified that he did not see his brother or Cifuentes with a knife that day.

On appeal, Gonzalez argues that the State's strategy at trial was to rebut "the facts from which the jury would be required to presume the reasonableness of [his] apprehension, rather than to prove that he did not actually have a reasonable apprehension of danger." Accordingly, Gonzalez focuses exclusively on his argument that "whenever the prosecuting attorneys specifically argued the legal consequence of the facts, it was the presumption they attacked, not [his] claim that he actually feared for his life or that such fear was reasonable under his version of the events." Gonzalez then summarily asserts that he was nonetheless entitled to acquittal "if, when [Cifuentes] reached for the knife in his pocket, he [Gonzalez] reasonably believed that the action he then took . . . was immediately necessary to protect himself against [Cifuentes's] unlawful use of deadly force."

However, as the fact finder, the jury was free to disbelieve the testimony of Gonzalez and of his brother – a convicted felon – that Cifuentes was stabbed accidently, and believe instead the testimony of Mendoza-Castillo and Medina – two unbiased witnesses – that Gonzalez intentionally stabbed Cifuentes. *See Brooks v. State*, 323 S.W.3d 893, 899 (Tex.Crim.App. 2010) (noting that jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony); *Margraves v. State*, 34 S.W.3d 912, 919 (Tex.Crim.App. 2000), *overruled on other grounds*, *Laster v. State*, 275 S.W.3d 512 (Tex.Crim.App. 2009)(noting that a jury may accept one version of the facts and reject another, and it may reject any part of a

---

[3] Mendoza-Castillo testified that Cifuentes did not have any type of weapon in his hand.

witness's testimony).   Thus, the jury could have decided that Gonzalez did not have a reasonable belief that deadly force was immediately necessary to protect himself from Cifuentes.   By rejecting Gonzalez's claim of self-defense and convicting him of murder, the jury clearly did so.

### 3.   The Jury Argument

When considered as a whole, the jurors' understanding of the law of self-defense was enhanced, rather than diminished, by the trial court's definition of the law of self-defense, its instruction to the jury that it should find Gonzalez not guilty if the jury believed or had a reasonable doubt as to whether or not Gonzalez acted in self-defense, and the parties' closing arguments.   The parties' closing arguments to the jury support the conclusion that Gonzalez was not egregiously harmed by the alleged error.

Although the prosecutors and defense counsel focused mainly on convincing the jury that the evidence adduced at trial supported their version of events, they both discussed self-defense. The prosecution, however, devoted more effort to the issue.   While the defense briefly pointed out that the State bore the burden of disproving Gonzalez's claims of self-defense and involuntariness beyond a reasonable doubt, the State spent considerably more time arguing that Gonzales was not entitled to assert self-defense.   In disputing Gonzalez's claim that he acted in self-defense, the prosecutors argued that the physical and blood-spatter evidence and Gonzalez's own in-court demonstration proved that he was lying and that he was not justified in using deadly force given that Cifuentes did not have a weapon while they were fighting.[4]   In so arguing, the prosecutors highlighted Medina's and Mendoza-Castillo's testimony that they never saw Cifuentes with a knife or weapon of any kind, much less one that could cause serious bodily injury.

---

[4] The prosecutors also argued that Gonzalez was not justified in using deadly force because the knife used to stab Cifuentes was longer than five and one-half inches.

#### 4. Other Relevant Information: *Voir Dire*

As is the case with the parties' closing arguments, the parties' arguments to the jury during *voir dire* enhanced, rather than diminished, the jurors' understanding of the law of self-defense. This factor also supports the conclusion that Gonzalez was not egregiously harmed by the alleged error.

The prosecutors explained to the jury that the State's burden was to prove the commission of the offense beyond a reasonable doubt and that if the evidence raised the issue of self-defense, the trial court was required to provide it with the law on self-defense, "even if the evidence the defense brought was unbelievable." In expounding upon the issue of self-defense, the prosecutors explained to the jury that a defendant was justified in using deadly force only if he reasonably believed that the use of such force was immediately necessary. Similarly, the defense explained to the jury that a defendant was justified in using deadly force only if he reasonably believed that the use of such force is immediately necessary. Defense counsel also emphasized that the State had to disprove self-defense beyond a reasonable doubt, and, if the jurors "ha[d] a question as to whether or not self-defense existed, [they had to] vote not guilty."

#### 5. Summary

Considering the jury charge, the weight of the contested evidence, arguments of counsel, and *voir dire*, we hold that Gonzalez has failed to show that he was egregiously harmed as a result of the alleged jury-charge error. Accordingly, we overrule his first issue.

### ADMISSION OF EXTRANEOUS OFFENSES

In his second issue, Gonzalez argues that the trial court erred by admitting, over his objections, extraneous conduct evidence impugning his reputation as peaceable when he had not

8

placed his reputation at issue. Specifically, he complains of the admission of evidence that: (1) he assaulted his wife once and threatened her with a knife on another occasion; (2) pulled a handgun on a woman and asked her if she wanted to die; and (3) destroyed a friend's satellite dish. According to Gonzalez, the erroneous admission of this evidence harmed him because the State's emphasis on his criminal disposition "unfairly damaged the effectiveness of [his] defensive theory on an improper emotional basis."

### *Standard of Review*

A trial court's decision to admit evidence is reviewed for an abuse of discretion, and we will reverse only if there is a showing of a clear abuse of discretion. *Prible v. State*, 175 S.W.3d 724, 731 (Tex.Crim.App. 2005). A clear abuse of discretion occurs only if the trial court's decision falls outside the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1991)(op. on reh'g).

### *Applicable Law*

Pursuant to Texas Rule of Evidence 404(b), evidence of other crimes, wrongs, or acts is not generally admissible to prove a defendant's character or to show action in conformity therewith. TEX.R. EVID. 404(b). However, a defendant may offer evidence to prove his character or to show he acted in conformity therewith. *Id*. at 404(a)(1)(A). If a defendant does place his character at issue, the prosecution is entitled to offer extraneous-offense evidence to rebut the defendant's contention. TEX.R. EVID. 404(a)(1)(A). A defendant places his character at issue and opens the door to otherwise inadmissible evidence by leaving a false impression with the jury that invites the other side to respond. *Hayden v. State*, 296 S.W.3d 549, 554 (Tex.Crim.App. 2009).

*Discussion*

Gonzalez argues that the testimony of his brother, Luis Gonzalez, that Gonzalez had a mellower and more peaceful disposition than his brothers did not place his character at issue and open the door so as to permit the State to introduce evidence of his past misconduct. The testimony in question was elicited from Luis Gonzalez when he was examined directly by defense counsel. It arose during the following exchange:

[Defense counsel]: Is [Gonzalez] like you and Javier in the way of how you-all deal with stuff?

[Luis Gonzalez]: No.

[Defense counsel]: Tell me, what's the difference?

[Luis Gonzalez]: [Gonzalez] is a little bit more emotional, more on the down-low.

[Defense counsel]: More what?

[Luis Gonzalez]: On the down-low, more peaceful and more quiet than me and my brother.

[Defense counsel]: What did you say? More white?

[Luis Gonzalez]: No. More on the down-low, more just mellow out.

Outside the jury's presence, the prosecutor argued that because Luis Gonzalez had "opened the door wide open to [Gonzalez's] peaceful character," she was permitted "to go into that and ask him about specific instances of conduct under Rule 405 that could challenge [his] opinion that [Gonzalez] is a peaceful person." Defense counsel initially objected on the bases that his questioning was limited to contrasting Gonzalez's character with that of his brothers and that the State could not introduce acts of misconduct, only convictions, but then objected on the basis that the State, rather than he, opened the door to Gonzalez's character. The trial court overruled

10

Gonzalez's objections on all bases proffered.

On cross-examination, Luis Gonzalez testified that he was not aware that Gonzalez had been arrested for: (1) assaulting his wife; (2) "pulling a handgun on a woman and asking her if she wanted to die;" and (3) destroying a friend's satellite dish. He was also unaware that Gonzalez was investigated for "pulling a knife on his wife." Luis Gonzalez thereafter agreed with the prosecutor that Gonzalez "really isn't all that peaceful." On redirect examination, however, he testified that, despite what he had learned about his brother during cross-examination, his brother was nonetheless a peaceful person.

According to Gonzalez, his brother was not testifying that he "is a person unlikely to make unprovoked attacks on others," but rather that he has "a generally mellow disposition." Such testimony clearly placed Gonzalez's character at issue. There is no doubt but that one could reasonably infer that Luis Gonzalez was attempting to help his brother by portraying Gonzalez as someone of good character with a peaceful disposition. By doing so, he left a false impression with the jury that invited the State to respond. The trial court did not err in concluding that Gonzalez's character for being law-abiding and peaceful had been placed in debate. *See Bass v. State*, 270 S.W.3d 557, 563 (Tex.Crim.App. 2008)(holding that argument that the defendant was a pastor and minister and "the real deal" and the "genuine" article opened the door to extraneous offenses); *Harrison v. State*, 241 S.W.3d 23, 27-8 (Tex.Crim.App. 2007)(holding that testimony that the defendant was a "good" and "sweet" boy opened the door to extraneous offenses); *Fuentes v. State*, 991 S.W.2d 267, 280 (Tex.Crim.App. 1999)(holding that answers to questions as to whether the witness had ever seen a person misbehave or cause trouble clearly asked about character).

11

Gonzalez also complains on appeal of the State's introduction of two instances of extraneous conduct. Gonzalez's wife, Veronica Vargas, testified on cross-examination that Gonzalez assaulted her twice previously, punching her on one occasion and threatening her with a knife on another occasion. Gonzalez's sister, Martha Gonzalez, who was Cifuentes's wife, testified on cross-examination that Gonzalez assaulted Vargas by punching her. Gonzalez correctly argues that at the time of the admission of his wife and sister's testimony, he had not placed his reputation or character at issue.[5] The trial court's admission of such testimony was, at the time of its admission, error. However, despite Gonzalez's assertion to the contrary, any error the trial court committed by admitting the extraneous-offense evidence during the State's case-in-chief was cured when Luis Gonzalez testified that Gonzalez was mellow and peaceful. *See Daggett v. State*, 187 S.W.3d 444, 454 (Tex.Crim.App. 2005)("[I]f extraneous offense evidence is improperly introduced during the State's case-in-chief, any error may be cured by the defendant's subsequent testimony which 'opens the door' to rebuttal."); *Siqueiros v. State*, 685 S.W.2d 68, 71 (Tex.Crim.App. 1985)("Lastly, where an extraneous offense may have been improperly admitted in the State's case-in-chief, subsequently admitted evidence can render the error harmless.").

Having disposed of Gonzalez's arguments, we hold that the trial court did not abuse its discretion by admitting the evidence of extraneous misconduct Gonzalez complains of on appeal. Accordingly, we overrule his second issue.

**CONCLUSION**

Having overruled both of Gonzalez' issues, the judgment of the trial court is affirmed.

---

[5] Both Veronica Vargas and Martha Gonzalez testified before Appellant's brother, Luis Gonzalez, testified.

September 19, 2012

CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

(Do Not Publish)