COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 

 


 
 
 FREDDY GONZALEZ,
  
                             Appellant,
  
 v.
  
 THE STATE OF TEXAS,
  
                            
 Appellee.
 
 
 §
  
 §
  
 §
  
 §
  
 §
  
 § 
  
 
 
  
 No. 08-11-00147-CR
  
 Appeal from the
  
 120th
 District Court
  
 of El
 Paso County, Texas 
  
 (TC# 20100D03505) 
  
 
 


 

O
P I N I O N

            Freddy Gonzalez appeals the trial court’s judgment
convicting him of murder and sentencing him to 35 years’ imprisonment.  Raising two issues on appeal, Gonzalez argues
that the trial court failed to apply the law of self-defense correctly in the
jury charge and erroneously admitted extraneous offense evidence.  We affirm.

Factual and Procedural BackgrounD

Gonzalez killed his brother-in-law, Hector
Saul Cifuentes, by stabbing him in the heart with a knife.  Indicted and tried for murder, Gonzalez
testified that he did not know how Cifuentes was stabbed, but that it must have
occurred when Cifuentes was pulling Gonzalez’s knife from his right-front
pocket while they both struggled for its control.  The trial court’s charge instructed the jury
on the law of self-defense and the use of deadly force in self-defense.  One of the application paragraphs in the
charge concerning the law of self-defense read:

You are further instructed, however, that if
you believe from the evidence beyond a reasonable doubt that at the time and
place in question, . . . CIFUENTES, was not using or attempting to use unlawful
force on the Defendant, or if you believe beyond a reasonable doubt that the
State has proven that the facts giving rise to the presumption of reasonable
belief that force was immediately necessary do not exist, then you will find
against the Defendant on his plea of self-defense, and say by your verdict ‘guilty’
(Verdict Form ‘A,’), and not consider any other charges below.

 

Although Gonzalez objected to other parts of the charge, he did not
object to this paragraph.  The jury
convicted Gonzalez of murder.

SELF-DEFENSE
INSTRUCTION

In his first issue, Gonzalez argues that the
application paragraph identified above was erroneous because it “affirmatively
instructed the jury to convict [him] without finding first that he had not
acted in self-defense,” thereby egregiously harming him by “depriv[ing] [him]
altogether of the self-defense theory which was best supported by his version
of the events.”  According to Gonzalez,
the self-defense theory that best supported his version of events was “his
belief that [Cifuentes] was attacking him with deadly force[;] . . . [a] belief
ar[ising] from the fact that [Cifuentes] pulled a knife from his pocket during
their struggle;” it was not the statutory presumption that his belief was
reasonable.  Gonzalez thus contends that the
trial court erred by instructing the jury to convict him if the jury found that
the State had disproved the statutory presumption without requiring the jury to
find first that his subjective belief was not reasonable.

Standard of Review

We review charge error on appeal by
determining whether error occurred, and if so, whether that error caused
sufficient harm to require reversal.  Ngo v. State, 175 S.W.3d 738, 744
(Tex.Crim.App. 2005).  The degree of harm
required for reversal depends on whether the defendant preserved error at
trial.  Ngo, 175 S.W.3d at 743.
 When the defendant preserves error at
trial by timely objection, the record must establish only “some harm” to obtain
reversal.  Id.  By
contrast, when, as here, the defendant fails to preserve error at trial, the
record must demonstrate “egregious harm” to obtain reversal.[1]  Id.
at 743-44.  Egregious harm is defined as harm
that affects the very basis of the case, deprives the defendant of a valuable
right, vitally affects the defensive theory, or makes a case for conviction
clearly and significantly more persuasive.  Id. at 750.  In other words, egregious harm denies the
defendant a fair and impartial trial.  Id. 
In determining whether the defendant suffered actual harm, not just
theoretical harm, we review:  (1) the
entire charge; (2) the state of the evidence, including the contested issues
and the weight of the probative evidence; (3) the arguments of counsel; and (4)
any other relevant information revealed by the record.  Id.
at 750 n.48.

Discussion

Assuming, without deciding, that the trial
court failed to apply the law of self-defense correctly, Gonzalez has nevertheless
failed to demonstrate egregious harm as a result of the alleged charge error.[2]

 

1.  The Jury Charge

Considering the relationship between the abstract
portion of the charge and all of its application paragraphs, the jury charge ameliorated the
purportedly erroneous application paragraph of which Gonzalez complains and did
not, as a whole, misinform the jury on the law of self-defense.  Accordingly, the jury charge as whole
supports the conclusion that Gonzalez was not egregiously harmed as a result of the alleged error.

Gonzalez concludes that he suffered egregious
harm, but fails to identify what that harm is. 
The State contends that the charge, when viewed as a whole and
not in isolation, “sufficiently and correctly informed the jury of the
conditions under which [it] [was] to find [Gonzalez] not guilty[.]”

In so arguing, the
State directs our attention to two separate parts of the charge.  The first is the abstract portion of the charge,
which correctly defines self-defense and the use of deadly force in
self-defense.  With respect to this portion
of the charge, Gonzalez concedes that “the basic law of self-defense was
correctly defined in the abstract as to the use both of ordinary force and of
deadly force.”  He further concedes that “[i]n
most respects, the court’s charge was unobjectionable.”  The second is the first application paragraph in
the charge, which correctly applies the law of self-defense to the facts of the
case by informing the jury that it was required to find Gonzalez not guilty if it
believed that he had a reasonable belief that deadly force was immediately
necessary to protect himself from Cifuentes. 
In its entirety, this paragraph read:

But [if] you further
find from the evidence, or have a reasonable doubt thereof, that . . . GONZALEZ
reasonably believed or is presumed to have reasonably believed as viewed from
his standpoint alone that deadly force when and to the degree used, if it was,
was immediately necessary to protect himself against the use or attempted use
of unlawful deadly force by . . . CIFUENTES, you will acquit . . . GONZALEZ and
say by your verdict ‘not guilty’ . . . .

 

With respect to this paragraph,
Gonzalez admits that he would have had “no real cause [for] complaint” had the
trial court stopped its application of the law to the facts at this juncture
and not continued.

2. 
The Contested Issues/Weight of Probative Evidence

            The weight of the probative evidence that the
State developed at trial refuting Gonzalez’s claim of self-defense was such that, notwithstanding the purportedly
erroneous application paragraph of which Gonzalez complains, the jury could
have found beyond a reasonable doubt that Gonzalez did not have a reasonable belief that deadly force was
required.  This factor therefore supports
the conclusion that Gonzalez was not egregiously
harmed as a result of the alleged error.

Although Gonzalez testified to his version of
events regarding how Cifuentes was stabbed, his testimony was uncorroborated,
and, more importantly, was contradicted by evidence the State developed at trial.  The State’s evidence included the testimony of two unbiased witnesses.  Jose Luis Medina, a next-door neighbor of the
Gonzalez family who did not know the family well, testified that he saw Cifuentes
and Gonzalez arguing in the backyard and then begin boxing.  He did not testify that they were grappling with
one another, as Gonzalez and his brother, Luis Gonzalez, testified, nor did he
testify that he saw Gonzalez and Cifuentes struggling over a knife, as Gonzalez
testified.  Likewise, Manuel Francisco
Mendoza-Castillo, a friend of Gonzalez and his brothers who drank with them and
Cifuentes that day, testified that Gonzalez and Cifuentes came to blows after
arguing and did not struggle over a knife as Gonzalez testified.

According to Medina, when Cifuentes and
Gonzalez stopped boxing and separated, Gonzalez reached toward his right-front
pocket, moved his hand toward Cifuentes’s chest, and “poke[d]” Cifuentes.  Although Medina testified that he did not
witness Gonzalez pull a knife from his pocket, he testified that he saw
Gonzalez holding a knife after he had poked Cifuentes in the chest.  Similarly, Mendoza-Castillo did not testify
that he saw Gonzalez stab Cifuentes. Rather, he testified that Cifuentes
stumbled away bleeding after the fight stopped, and, when Cifuentes so stumbled,
he saw Gonzalez holding a bloody kitchen knife in his hand.

Although Mendoza-Castillo testified that he
did not know how Gonzalez came to possess the knife because Gonzalez never told
or showed anyone he had a knife, both he and Medina testified that Cifuentes
did not have a gun, knife, or rock in his hands while fighting Gonzalez.[3]  Luis Gonzalez testified that he did
not see his brother or Cifuentes with a knife that day.

            On appeal, Gonzalez argues
that the State’s strategy at trial was to rebut “the facts from which the jury
would be required to presume the reasonableness of [his] apprehension, rather
than to prove that he did not actually have a reasonable apprehension of danger.”  Accordingly, Gonzalez focuses
exclusively on his argument that “whenever the prosecuting attorneys
specifically argued the legal consequence of the facts, it was the presumption
they attacked, not [his] claim that he actually feared for his life or that such
fear was reasonable under his version of the events.”  Gonzalez then summarily asserts that he was
nonetheless entitled to acquittal “if, when [Cifuentes] reached for the knife
in his pocket, he [Gonzalez] reasonably believed that the action he then took .
. . was immediately necessary to protect himself against [Cifuentes’s] unlawful
use of deadly force.”

However, as the
fact finder, the jury was free to disbelieve the testimony of Gonzalez and of
his brother – a convicted felon – that Cifuentes was stabbed accidently, and believe
instead the testimony of Mendoza-Castillo
and Medina – two unbiased witnesses – that Gonzalez intentionally stabbed Cifuentes.
 See
Brooks v. State, 323 S.W.3d 893, 899 (Tex.Crim.App. 2010) (noting
that jurors are the exclusive judges of the facts, the credibility of the
witnesses, and the weight to be given to the testimony); Margraves v. State, 34 S.W.3d 912, 919 (Tex.Crim.App. 2000), overruled on other grounds, Laster v. State, 275 S.W.3d 512 (Tex.Crim.App.
2009)(noting that a jury may accept one version of the facts and reject
another, and it may reject any part of a witness’s testimony).  Thus, the jury could have decided that
Gonzalez did not have a reasonable belief that deadly force was immediately
necessary to protect himself from Cifuentes. 
By rejecting Gonzalez’s claim of self-defense and convicting him of
murder, the jury clearly did so.

3. 
The Jury Argument

            When
considered as a whole, the jurors’ understanding of the law of self-defense was
enhanced, rather than diminished, by the trial court’s definition of the law of
self-defense, its instruction to the jury that it should find Gonzalez not
guilty if the jury believed or had a reasonable doubt as to whether or not
Gonzalez acted in self-defense, and the parties’ closing arguments.  The parties’ closing arguments to the jury
support the conclusion that Gonzalez was not egregiously harmed by the alleged error.

Although the
prosecutors and defense counsel focused mainly on convincing the jury that the
evidence adduced at trial supported their version of events, they both discussed
self-defense.  The prosecution, however,
devoted more effort to the issue.  While
the defense briefly pointed out that the State bore the burden of disproving
Gonzalez’s claims of self-defense and involuntariness beyond a reasonable doubt,
the State spent considerably more time arguing that Gonzales was not entitled
to assert self-defense.  In disputing
Gonzalez’s claim that he acted in self-defense, the prosecutors argued that the
physical and blood-spatter evidence and Gonzalez’s own in-court demonstration proved
that he was lying and that he was not justified in using deadly force given
that Cifuentes did not have a weapon while they were fighting.[4]  In so arguing, the prosecutors highlighted Medina’s and Mendoza-Castillo’s testimony
that they never saw Cifuentes with a knife or weapon of any kind, much less one
that could cause serious bodily injury.

4.  Other Relevant Information:  Voir
Dire

As is the case with the parties’ closing
arguments, the parties’ arguments to the jury during voir dire enhanced, rather than
diminished, the jurors’ understanding of the law of self-defense.  This factor also supports the conclusion that
Gonzalez was not egregiously harmed by
the alleged error.

The prosecutors explained to the jury that
the State’s burden was to prove the commission of the offense beyond a
reasonable doubt and that if the evidence raised the issue of self-defense, the
trial court was required to provide it with the law on self-defense, “even if
the evidence the defense brought was unbelievable.”  In expounding upon the issue of self-defense,
the prosecutors explained to the jury that a defendant was justified in using
deadly force only if he reasonably believed that the use of such force was
immediately necessary.  Similarly, the
defense explained to the jury that a defendant was justified in using deadly
force only if he reasonably believed that the use of such force is immediately
necessary.  Defense counsel also emphasized
that the State had to disprove self-defense beyond a reasonable doubt, and, if
the jurors “ha[d] a question as to whether or not self-defense existed, [they
had to] vote not guilty.”

5.  Summary

            Considering the jury
charge, the weight of the contested evidence, arguments of counsel, and voir dire, we hold that Gonzalez has
failed to show that he was egregiously harmed as a result of the alleged
jury-charge error.  Accordingly, we
overrule his first issue.

ADMISSION
OF EXTRANEOUS OFFENSES

            In his second issue, Gonzalez
argues that the trial court erred by admitting, over his objections, extraneous
conduct evidence impugning his reputation as peaceable when he had not placed
his reputation at issue.  Specifically,
he complains of the admission of evidence that:  (1) he assaulted his wife once and threatened
her with a knife on another occasion; (2) pulled a handgun on a woman and asked
her if she wanted to die; and (3) destroyed a friend’s satellite dish.  According to Gonzalez, the erroneous
admission of this evidence harmed him because the State’s emphasis on his
criminal disposition “unfairly damaged the effectiveness of [his] defensive
theory on an improper emotional basis.”

Standard of Review

            A trial court’s decision
to admit evidence is reviewed for an abuse of discretion, and we will reverse only
if there is a showing of a clear abuse of discretion.  Prible
v. State, 175 S.W.3d 724, 731 (Tex.Crim.App. 2005).  A
clear abuse of discretion occurs only if the trial court’s decision falls
outside the “zone of reasonable disagreement.” 
Montgomery v. State, 810
S.W.2d 372, 391 (Tex.Crim.App. 1991)(op. on reh’g).

Applicable Law

Pursuant to Texas Rule of Evidence 404(b),
evidence of other crimes, wrongs, or acts is not generally admissible to prove
a defendant’s character or to show action in conformity therewith.  Tex.R.
Evid. 404(b).  However, a
defendant may offer evidence to prove his character or to show he acted in
conformity therewith.  Id. at 404(a)(1)(A).  If a defendant does place his character at
issue, the prosecution is entitled to offer extraneous-offense evidence to rebut
the defendant’s contention.  Tex.R. Evid. 404(a)(1)(A).  A defendant places his character at issue and
opens the door to otherwise inadmissible evidence by leaving a false impression
with the jury that invites the other side to respond.  Hayden
v. State, 296 S.W.3d 549, 554 (Tex.Crim.App. 2009).

Discussion

Gonzalez argues that the testimony of his
brother, Luis Gonzalez, that Gonzalez had a mellower and more peaceful disposition
than his brothers did not place his character at issue and open the door so as
to permit the State to introduce evidence of his past misconduct.  The testimony in question was elicited from
Luis Gonzalez when he was examined directly by defense counsel.  It arose during the following exchange:

[Defense
counsel]:  Is [Gonzalez] like you and
Javier in the way of how you-all deal with stuff?

 

[Luis
Gonzalez]:  No.

 

[Defense
counsel]:  Tell me, what’s the
difference?

 

[Luis
Gonzalez]:  [Gonzalez] is a little bit
more emotional, more on the down-low.

 

[Defense
counsel]:  More what?

 

[Luis
Gonzalez]:  On the down-low, more
peaceful and more quiet than me and my brother.

 

[Defense
counsel]:  What did you say?  More white?

 

[Luis
Gonzalez]:  No.  More on the down-low, more just mellow out.

 

            Outside the jury’s
presence, the prosecutor argued that because Luis Gonzalez had “opened the door
wide open to [Gonzalez’s] peaceful character,” she was permitted “to go into
that and ask him about specific instances of conduct under Rule 405 that could
challenge [his] opinion that [Gonzalez] is a peaceful person.”  Defense counsel initially objected on the
bases that his questioning was limited to contrasting Gonzalez’s character with
that of his brothers and that the State could not introduce acts of misconduct,
only convictions, but then objected on the basis that the State, rather than
he, opened the door to Gonzalez’s character. 
The trial court overruled Gonzalez’s objections on all bases proffered.

On cross-examination, Luis Gonzalez testified
that he was not aware that Gonzalez had been arrested for:  (1) assaulting his wife; (2) “pulling a
handgun on a woman and asking her if she wanted to die;” and (3) destroying a
friend’s satellite dish.  He was also
unaware that Gonzalez was investigated for “pulling a knife on his wife.”  Luis Gonzalez thereafter agreed with the
prosecutor that Gonzalez “really isn’t all that peaceful.”  On redirect examination, however, he
testified that, despite what he had learned about his brother during
cross-examination, his brother was nonetheless a peaceful person.

According to Gonzalez, his brother was not
testifying that he “is a person unlikely to make unprovoked attacks on others,”
but rather that he has “a generally mellow disposition.”  Such testimony clearly placed Gonzalez’s
character at issue.  There is no doubt
but that one could reasonably infer that Luis Gonzalez was attempting to help
his brother by portraying Gonzalez as someone of good character with a peaceful
disposition.  By doing so, he left a
false impression with the jury that invited the State to respond.  The trial court did not err in concluding that
Gonzalez’s character for being law-abiding and peaceful had been placed in
debate.  See Bass v. State, 270 S.W.3d 557, 563 (Tex.Crim.App. 2008)(holding
that argument that the defendant was a pastor and minister and “the real deal”
and the “genuine” article opened the door to extraneous offenses); Harrison v. State, 241 S.W.3d 23, 27-8
(Tex.Crim.App. 2007)(holding that testimony that the defendant was a “good” and
“sweet” boy opened the door to extraneous offenses); Fuentes v. State, 991 S.W.2d 267, 280 (Tex.Crim.App. 1999)(holding
that answers to questions as to whether the witness had ever seen a person
misbehave or cause trouble clearly asked about character).

Gonzalez also complains on appeal of the
State’s introduction of two instances of extraneous conduct.  Gonzalez’s wife, Veronica Vargas, testified
on cross-examination that Gonzalez assaulted her twice previously, punching her
on one occasion and threatening her with a knife on another occasion.  Gonzalez’s sister, Martha Gonzalez, who was Cifuentes’s
wife, testified on cross-examination that Gonzalez assaulted Vargas by punching
her.  Gonzalez correctly argues that at
the time of the admission of his wife and sister’s testimony, he had not placed
his reputation or character at issue.[5]  The trial court’s admission of such testimony
was, at the time of its admission, error.  However, despite Gonzalez’s assertion
to the contrary, any error the trial court committed by admitting the extraneous-offense evidence during the State’s
case-in-chief was cured when Luis Gonzalez testified that Gonzalez was mellow
and peaceful.  See Daggett v. State, 187 S.W.3d 444, 454 (Tex.Crim.App. 2005)(“[I]f
extraneous offense evidence is improperly introduced during the State’s
case-in-chief, any error may be cured by the defendant’s subsequent testimony
which ‘opens the door’ to rebuttal.”); Siqueiros
v. State, 685 S.W.2d 68, 71 (Tex.Crim.App. 1985)(“Lastly, where an
extraneous offense may have been improperly admitted in the State’s
case-in-chief, subsequently admitted evidence can render the error harmless.”).

Having disposed of Gonzalez’s arguments, we
hold that the trial court did not abuse its discretion by admitting the
evidence of extraneous misconduct Gonzalez complains of on appeal.  Accordingly, we overrule his second issue.

CONCLUSION

            Having
overruled both of Gonzalez’ issues, the judgment of the trial court is affirmed.

 

 

 

September 19, 2012

                                                                        CHRISTOPHER
ANTCLIFF, Justice

 

Before McClure, C.J., Rivera, and Antcliff, JJ.

 

(Do Not Publish)











[1]
As noted above, Gonzalez failed to object to the application paragraph
contained in the trial court’s charge and set forth above.  This is the same application paragraph that
he now complains of on appeal.

 





[2]
Because the trial court’s inclusion of a defensive issue in the charge signals
to the jury that such a defense is “‘the law applicable to the case’[,] . . .
any flaw in the charge [regarding the defense] amounts to an error in the
charge . . . .”  Barrera v. State, 982 S.W.2d 415, 416 (Tex.Crim.App. 1998).  A defendant is entitled to use deadly force
in self-defense if he or she:  (1) would
be justified in using non-deadly force as established by Section 9.31 of the
Penal Code; and (2) reasonably believes that deadly force is immediately
necessary to protect him against unlawful deadly force or to prevent the
imminent commission of specified violent crimes.  See
Tex. Penal Code Ann. § 9.32(a)
(West 2011).  A defendant’s entitlement
to use deadly force against an assailant is based upon what he reasonably
believed the danger was, as he reasonably apprehended it, not upon whether his
assailant was actually using or attempting to use unlawful deadly force.  Hamel
v. State, 916 S.W.2d 491, 493 (Tex.Crim.App. 1996); Semaire v. State, 612 S.W.2d 528, 530 (Tex.Crim.App. 1980); Jones v. State, 544 S.W.2d 139, 142
(Tex.Crim.App. 1976).





[3]
Mendoza-Castillo testified that Cifuentes did not have any type of weapon in his hand.





[4]
The prosecutors also argued that Gonzalez was not justified in using deadly
force because the knife used to stab Cifuentes was longer than five and
one-half inches.





[5]
Both Veronica Vargas and Martha Gonzalez testified before Appellant’s brother,
Luis Gonzalez, testified.