# NO. 12-22-00107-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DAMEON TARREL WILLIAMS,* *APPELLANT* | *§* | *APPEAL FROM THE 392ND* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | *§* | *HENDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Appellant, Dameon Tarrel Williams, appeals his conviction and sentence for murder. In three issues, Appellant argues that the trial court committed reversible error when it improperly admitted evidence and allowed cross-examination on a specific instance of conduct. We affirm.

## BACKGROUND

On February 22, 2020, at approximately noon, Ashley Koonce arrived at her mother's house in Athens, Texas with her two sons. The older son, D.W.J., was six years old; the younger son was three. Ashley remained in her car to complete a phone call with Tonya Walker while the children exited the car to play in mud puddles on the driveway. Tonya testified that Ashley said, "Hang on a minute, Dameon's here," followed by a sound like knocking or gunshots. Tonya called her daughter Briana and instructed her to go to the house as soon as possible.

D.W.J., eight years old at the time of trial, testified that he was playing in a mud puddle in front of his grandmother's house, and his mother was sitting in her car with the door open. He saw his father pull up in his vehicle, draw his gun, and shoot Ashley multiple times. Ashley instructed D.W.J. to run to the house and knock on the door, which he did. D.W.J. then saw Appellant return to his car and drive away. Christian Koonce, Ashley's brother, testified that he answered the door when D.W.J. knocked and D.W.J. told him, "My daddy shot my mama."

Upon looking outside, Christian saw his sister lying on the ground, and witnessed Appellant, who was holding a gun, reenter his car and drive away.

Ashley had been shot ten times—twice in the head, chest, and back, and once each in the ear, shoulder, left flank, and abdomen. Briana Walker arrived at the scene before law enforcement, and stated that Ashley was already deceased. Briana testified that Appellant's and Ashley's relationship was on and off, and that Appellant became angry and threatened Ashley when she dated other people during the "off" times. Briana specifically recalled an incident of violence that occurred in the summer of 2015. Ashley asked Briana to come over to her residence, because she and Appellant had been arguing, and Ashley believed having another person present would mitigate the severity of the dispute. On that day, Briana witnessed Appellant suddenly pour "a gallon of bleach" onto Ashley's head. Ashley screamed and cried because the bleach got into her eyes. Briana and Ashley left the residence with D.W.J., who was still a baby at the time. Appellant chased them down the road in his vehicle as they traveled to Briana's nearby house, exited the vehicle when he caught up to Briana and Ashley, and shoved Ashley to the ground. Ashley and Briana reported the incident to police and took pictures of Ashley's injuries. The trial court admitted these photographs into evidence.

Ashley's mother, Angela Koonce, testified that she visited Briana's house on the night that Appellant poured the bleach onto Ashley's head, and saw that Ashley's eyes and skin were extremely reddened, and her hair was discolored. She further testified that at approximately 1:30 a.m. on February 22, Ashley came to her house because she feared that Appellant would try to kill her. Angela witnessed Ashley and her two sons lying down in Ashley's vehicle so as not to be visible, and saw Appellant's car driving away. Ashley was very afraid and screamed that Appellant was coming to kill her. Both children also appeared to be afraid, and both had urinated on themselves. Later that morning, Ashley gave Angela the PIN to one of her bank cards, and again expressed that Appellant was going to kill her. Angela said that on other occasions, she personally heard Appellant call Ashley names, curse at her, and threaten to beat and kill her.

The defense offered one witness, Billy Singletary, who stated that he met Ashley online a few weeks before February 22, though they never met in person, and that she sent him a partially nude picture of herself at around 2:00 a.m. that morning. Appellant offered into evidence memes and social media posts which he asserted proved that Ashley, rather than Appellant, was the

aggressor in the incidents of domestic violence between them. Appellant asserted that he shot Ashley in self-defense, arguing that she initially aimed a gun at him and fired two shots, at which point Appellant had to shoot her to save his own life. He further contended that law enforcement's investigation was performed hastily and poorly, and that police failed to secure the crime scene.

The jury found Appellant "guilty" of the charged offense. And at the conclusion of the punishment phase, the jury assessed punishment of fifty years' imprisonment. This appeal followed.

### EVIDENCE OF EXTRANEOUS CONDUCT

In his first issue, Appellant argues that the trial court erred in admitting evidence related to the domestic violence incident that allegedly occurred between Appellant and Ashley in the summer of 2015.

**Applicable Law**

We review a trial court's ruling on the admissibility of extraneous offenses under an abuse of discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). We will not reverse the trial court unless a clear abuse of discretion is shown. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). If the trial court's decision is within the zone of reasonable disagreement, the trial court has not abused its discretion, and we will uphold the trial court's ruling. *De La Paz*, 279 S.W.3d at 343–44. A trial court's ruling that admits extraneous acts is generally within the zone of reasonable disagreement if the evidence shows that "1) an extraneous transaction is relevant to a material, non-propensity issue, and 2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury." *Id.* at 344. Furthermore, the trial court's evidentiary ruling will not be disturbed if it is correct on any theory of law applicable to that ruling. *Id.*

Rule 404(b) allows the admission of evidence of other crimes, wrongs, or acts for purposes other than to "prove [the] character of a person in order to show action in conformity therewith." TEX. R. EVID. 404(b); *Montgomery v. State*, 810 S.W.2d 372, 387–88 (Tex. Crim. App. 1990). "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b). Whether extraneous-offense evidence has relevance other than

3

for character conformity is a question for the trial court. *De La Paz*, 279 S.W.3d at 343. The trial court must also balance between the probative value of the evidence and the counter factors set out in Rule 403, although that balance is slanted toward the admission of otherwise relevant evidence. *Id.*; *Hammer v. State*, 296 S.W.3d 555, 568–69, (Tex. Crim. App. 2009) (Rule 403 should be used "sparingly," when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value); *see* TEX. R. EVID. 403. In considering this balancing test, courts must weigh (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). In any given case, "these factors may well blend together." *Id.* at 642.

**Analysis**

When a criminal defendant claims self-defense, the State may present evidence of other violent acts in which the defendant was the aggressor to show the accused's intent. *Robinson v. State*, 844 S.W.2d 925, 929 (Tex. App.—Houston 1992, no pet.). And even though an opening statement is not evidence to be considered by the jury, defensive theories presented in the defendant's opening statement can open the door for admission of evidence of an extraneous offense as rebuttal evidence during the State's case-in-chief. *Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008).

In this case, counsel for Appellant plainly introduced the theory of self-defense in his opening argument, stating that Appellant shot Ashley because she pointed a gun at him and he had to defend himself, and therefore Appellant was not guilty of murder. Consequently, Appellant opened the door for the State to present evidence rebutting Appellant's contention of self-defense, specifically, evidence of other acts of violence by Appellant toward the deceased. *See Robinson*, 844 S.W.2d at 929. The evidence regarding the 2015 incident further provided illustration as to the nature of the relationship between Appellant and the deceased, which bore on the questions of Appellant's motive and intent. *See* TEX. CODE CRIM. PROC. ANN. art. 38.36 (West 2023) (in murder prosecutions, the State shall be permitted to offer testimony as to the

4

previous relationship between the accused and the deceased); ***Roman v. State***, No. 05-20-00011-CR, 2021 WL 3135946, at \*4 (Tex. App.—Dallas July 23, 2021, no pet.) (mem. op., not designated for publication). We agree with Appellant's contention that the alleged incident is remote in time to the charged offense. However, remoteness does not affect the incident's relevancy; it affects only its weight. ***Newton v. State***, 301 S.W.3d 315, 318 (Tex. App.—Waco 2009, pet. ref'd). Courts have found extraneous offenses occurring long before the time of the charged offense to be probative despite the lapse. *See, e.g.*, ***id.*** at 320 (approximately twenty-five years); *see also* ***Dies v. State***, 649 S.W.3d 273, 285 (Tex. App.—Dallas 2022, pet. ref'd) (approximately twelve years); ***Lavarry v. State***, 936 S.W.2d 690, 695 (Tex. App.—Dallas 1996, pet. ref'd) (ten years). Accordingly, the evidence was probative of the issue of Appellant's intent at the time of the offense, the nature of the relationship between Ashley and Appellant, and his theory of self-defense.

The State's need for the evidence was fairly high, especially as the only testifying eyewitness to the shooting was six years old at the time of the offense, and unable to recall every detail with perfect clarity. The extraneous offense at issue was a specific violent interaction between the individuals wherein Appellant was the aggressor, controverting Appellant's theory that Ashley was the initial aggressor in the present case. The extraneous offense evidence involved an incident much less serious than the murder already at issue; therefore, the trial court could conclude that the extraneous offenses did not tend to suggest a decision on an improper or emotional basis instead of a rational basis. *See* ***Robisheaux v. State***, 483 S.W.3d 205, 220 (Tex. App.—Austin 2016, pet. ref'd). The evidence was not likely to confuse or distract the jury from the main issues in the case, as the trial court provided a limiting instruction detailing under what circumstances, and for what purposes, the jury could consider the extraneous offense. *See* ***Gaytan v. State***, 331 S.W.3d 218, 228 (Tex. App.—Austin 2011, pet. ref'd) (appellate court presumes jury obeyed limiting instructions). The evidence was neither scientific nor complex, was presented by a lay witness in a factual manner, and the record contains nothing to suggest that the jury was either unequipped to evaluate said evidence or likely to assign it undue weight. ***James v. State***, 623 S.W.3d 533, 550 (Tex. App.—Fort Worth 2021, no pet.). Finally, Appellant does not assert that the presentation of the disputed evidence was inordinately lengthy or repetitive of other evidence. *See* ***Gigliobianco***, 210 S.W.3d at 641–42.

Reviewing the record as a whole and giving due deference to the trial court, we cannot say it abused its discretion in finding the danger of unfair prejudice did not substantially outweigh the probative nature of the State's extraneous offense evidence. Thus, the trial court's decision to admit the extraneous offenses fell within the zone of reasonable disagreement. We overrule Appellant's first issue.

<strong><u>P</u>HOTOGRAPHIC <u>E</u>VIDENCE</strong>

Appellant contends in his second issue that the trial court erred by admitting, over his objection, State's Exhibits 12 and 13 constituting two crime scene photographs of Briana sitting next to Ashley's body.

## <u>Applicable Law</u>

A trial court's ruling on the admissibility of photographic evidence is reviewed under an abuse of discretion standard. ***Prible v. State***, 175 S.W.3d 724, 734 (Tex. Crim. App. 2005). Again, so long as the trial court's decision is within the zone of reasonable disagreement, we will not disturb it on appeal. ***De La Paz***, 279 S.W.3d at 343–44. Generally speaking, "if a verbal description of the body and the scene would be admissible, a photograph depicting the same is admissible." ***Erazo v. State***, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004). But this rule is not absolute—Rule 403 requires that a photograph have some probative value and that its probative value not be substantially outweighed by its inflammatory nature. TEX. R. EVID. 403; *see Erazo*, 144 S.W.3d at 491–92 ("If there are elements of a photograph that are genuinely helpful to the jury in making its decision, the photograph is inadmissible only if the emotional and prejudicial aspects substantially outweigh the helpful aspects."). If a photograph is competent, material and relevant to the issue at trial, it is not rendered inadmissible merely because it is gruesome or might tend to arouse the passions of the jury, unless it is offered solely to inflame the minds of the jury. ***Erazo***, 144 S.W.3d at 489.

Courts must use the following factors when making a Rule 403 analysis: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. ***Id.*** The court also considers the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in color or black-and-white, whether they are close-up, whether the body

6

depicted is clothed or naked, the availability of other means of proof, and other circumstances unique to the individual case. ***Williams v. State***, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009).

<u>Analysis</u>

Exhibits 12 and 13 are color photographs showing different angles of the same subject matter. The photos depict Ashley's clothed body face down on the ground and Briana seated nearby with a tearful and distraught facial expression.[1] A law enforcement officer is kneeling near the body and appears to be checking for vital signs. Very little blood is visible in the photos, and Ashley's head injuries are largely concealed by her hair. Appellant argues that the danger of unfair prejudice substantially outweighs the probative value of these photos not because they are overly gruesome or disturbing, but because they show Briana in an emotional state, which he appears to argue constitutes improper bolstering of her testimony.[2]

The photographs generally have substantial probative value because they depict the crime scene as found by law enforcement. ***Williams***, 301 S.W.3d at 692; ***Narvaiz v. State***, 840 S.W.2d 415, 430 (Tex. Crim. App. 1992). Further, the photos are relevant to oppose Appellant's defensive theories as raised during trial. ***Zuliani***, 97 S.W.3d at 594 (the State bears burden of persuasion to disprove a raised defense when defendant meets burden of production). As stated above, Appellant's primary defense at trial was self-defense, specifically that Ashley shot at Appellant first, prompting him to shoot her. Moreover, Appellant raised the theory that the crime scene was not secured and argued that the police investigation of the murder was poorly performed. The pictures in question show the immediate surroundings of the body from multiple angles, show the absence of a gun in the vicinity, and provide some illustration of the actions taken by the police officers upon reaching the scene of the crime.

Appellant asserts in a conclusory fashion that the photos showing a "crying and very emotional" Briana could only have been offered for the purpose of "unfairly prejudic[ing]

---

[1] State's Exhibit 11 is another angle of the same scene, except that it shows only Briana's back, not her face.

[2] "Bolstering" is evidence offered for the "sole purpose" of enhancing the credibility of a witness or source of evidence without substantively contributing to relevance. ***Rivas v. State***, 275 S.W.3d 880, 886 (Tex. Crim. App. 2009). There is some debate as to the continued validity of a bolstering objection. ***Bellard v. State***, No. 05-21-00633-CR, 2023 WL 1097769, at *6 n.4 (Tex. App.—Dallas Jan. 30, 2023, pet. ref'd) (mem. op., not designated for publication), ***Trevino v. State***, No. 13-11-00709-CR, 2013 WL 3518200, at *4 (Tex. App.—Corpus Christi July 11, 2013, pet. ref'd) (mem. op., not designated for publication). We need not address this issue, as we conclude that the photographs were relevant for purposes other than enhancing Briana's credibility.

Appellant in the eyes of the jury." However, he does not make any additional argument or cite any authorities in support of his contention that crime scene photographs depicting a tearful person are categorically more prejudicial than probative, and we have found none.[3] Even photographs of a gruesome and detailed nature may be properly admitted at trial if they are relevant and helpful to the jury in making its decision. *See, e.g., **Fields v. State***, No. 01-07-00856-CR, 2009 WL 723992, at *5–6 (Tex. App.—Houston [1st Dist.] Mar. 19, 2009) (mem. op., not designated for publication). The fact that Briana was crying shortly after the death of her friend would be expected and understandable, rather than shocking or inflammatory, from a juror's viewpoint. This is particularly true in comparison to other crime scene photographs admitted into evidence, which show Ashley's injuries in much more graphic detail. Thus, we cannot conclude that Exhibits 12 and 13 were so inflammatory that they would likely impress the jury in an irrational and indelible way, so as to outweigh their probative value.

Additionally, the State required very little time to develop the disputed evidence. And the State had need of the evidence, as aforementioned, to show the crime scene as discovered by police and the actions of law enforcement upon arrival. As to the additional factors specific to photographic evidence, Appellant only disputes the admission of two photos, both of which are printed to fill a standard sheet of paper. The photos are in color, but are not especially gruesome or close-up, and are much less so than other photographs of Ashley's injuries to which Appellant did not object.

For the above reasons, it was not outside the zone of reasonable disagreement for the trial court to conclude that the probative value of the photographs was not substantially outweighed by their inflammatory nature. Thus, the trial court did not abuse its discretion in admitting State's Exhibits 12 and 13. We overrule Appellant's second issue.

### CROSS-EXAMINATION ON SPECIFIC INSTANCES OF CONDUCT

In his third issue, Appellant contends that the trial court erred in allowing the State to question his aunt, Bernadine Allen, about a specific instance of Appellant's conduct during the punishment phase.

---

[3] *See* TEX. R. APP. P. 38.1(i) ("[t]he brief must contain a clear and concise argument for the contentions made, with appropriate citations to the authorities....").

8

**Applicable Law**

In a criminal case, the general rule is that evidence of a person's character is not admissible to prove conforming conduct. *Harrison v. State*, 241 S.W.3d 23, 25 (Tex. Crim. App. 2007). However, under Texas Rule of Evidence 404(a), a defendant may bring his character into issue by introducing character or reputation evidence. TEX. R. EVID. 404(a). Once the defendant has done so, the State may offer rebuttal character evidence to test the basis for the witness's opinions. *Id.*; *Pantoja v. State*, 496 S.W.3d 186, 192 (Tex. App.—Fort Worth 2016, pet. ref'd). The State may ask a witness about specific instances of conduct inconsistent with the character trait brought into issue, including questions asking whether the witness "had heard" or "was aware" of specific instances. TEX. R. EVID. 405(a); *Harrison*, 241 S.W.3d at 25. The purpose of permitting this cross-examination is not to discredit the person whose character is in issue, but rather to discredit the testimony of the character witness, potentially by demonstrating that the witness either lacks relevant knowledge or has a "low standard" for good character. *Wheeler v. State*, 67 S.W.3d 879, 886 n. 16 (Tex. Crim. App. 2002).

The right of a party to cross-examine a character witness on specific instances of conduct is not unlimited; first, the incidents must be relevant to the character traits at issue, and second, the alleged bad act must have a basis in fact. *Wilson v. State*, 71 S.W.3d 346, 350–51 (Tex. Crim. App. 2002). Before the questions are asked, the foundation for inquiring into the specific instances of conduct should be laid outside the jury's presence so that the judge will have an opportunity to rule on their propriety. *Id.* The function of the factual basis rule is to provide trial and appellate courts with a test for determining whether the State asks its "do you know" questions in good faith. *Matter of G.M.P.*, 909 S.W.2d 198, 210 (Tex. App.—Houston [14th Dist.] 1995, no pet.).

**Analysis**

Appellant asserts that the State improperly questioned Allen about an instance in which he threatened to kill Ashley prior to February 22, 2020. He argues that the incident was not relevant to any character trait at issue and lacked a factual basis. Appellant further contends that the State did not properly lay the foundation for the question outside of the jury's presence.

On direct examination, defense counsel elicited character testimony from Allen that Appellant is an "awesome child," a humble person with a mild temperament, and a good student with no history of disciplinary problems at school. She testified that she had never known

9

Appellant to get angry or mad, and that he loved Ashley "very, very much." She further expressed that Appellant's actions on the day of the murder were unlike him, and that she did not know "that side" of him. She stated that anyone would act in self-defense if "something is ready to happen." Thereafter, on cross-examination, the State asked Allen, "Did you know that [Appellant] had previously threatened to kill Ashley?" Defense counsel objected on the basis that the question lacked a factual basis. Counsel for both parties conferred with the judge at the bench as to the factual basis for the question, and the trial court overruled the objection. The State repeated the question, and defense counsel objected again that the question "[was] not a "have you heard" or "did you know,"" but "assume[d] facts that are not in evidence." The trial court again overruled the objection. Allen proceeded to testify that she was unaware of the previous threat.

Allen's testimony as to the peaceful and loving character of Appellant opened the door for cross-examination regarding specific instances of conduct to rebut Allen's opinions. *See* TEX. R. EVID. 404(a); ***Pantoja***, 496 S.W.3d at 192. Moreover, the specific incident of conduct— Appellant's threat to kill Ashley—was relevant as it was inconsistent with Allen's testimony that Appellant never got angry and greatly loved Ashley. The factual basis for the incident is also contained in the record, specifically in Angela Koonce's testimony that she heard Appellant threaten to kill Ashley.

Finally, although Appellant now complains that the State did not lay the foundation for the question outside the presence of the jury before asking the question, as required in ***Wilson***, he did not raise this objection in the trial court. It is axiomatic that a complaint on appeal must comport with the objection made in the trial court. TEX. R. APP. P. 33.1(a); *see **Lovill v. State**,* 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial."); ***Burke v. State***, 371 S.W.3d 252, 261–62 (Tex. App.—Houston [1st Dist. 2011, pet. dism'd) (error not preserved when defense counsel objected to cross-examination on grounds specific instance of conduct not proven beyond a reasonable doubt, but Appellant complained on appeal that State did not properly lay foundation). Because Appellant failed to present this objection in the trial court, this portion of his third issue is not preserved for appeal.

For the above reasons, we conclude that the trial court did not abuse its discretion by overruling Appellant's objections to the State's questioning of Allen. We overrule Appellant's third issue.

## DISPOSITION

Having overruled each of Appellant's issues, we *affirm* the trial court's judgment.

**GREG NEELEY**
Justice

Opinion delivered June 8, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

11



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

JUNE 8, 2023

NO. 12-22-00107-CR

**DAMEON TARREL WILLIAMS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 392nd District Court

of Henderson County, Texas (Tr.Ct.No. CR20-0253-173)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*